THE SYCAMORE MARSH HARVESTER MANUFACTURING COMPANY, PLAINTIFF IN ERROR, v. JOHN T. STURM, DEFENDANT IN ERROR.

1. **Contract**: BREACH: DAMAGES. Where two parties have made a contract which one of them has broken the damages which the other ought to receive should be either such as may fairly and reasonably be considered rising naturally, that is, according to the usual course of things, from the breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it.

2. ———: ———: ———: WARRANTY. Upon the sale of a machine the seller gave the purchaser a warranty in writing in these words: "Hastings, Neb., Sept. 5, 1877. We warrant Wheeler No. 6 combined reaper and mower to be a good grain-cutting machine and a good mowing machine. Should the machine fail to do as warranted, then in that case we are to be notified and given time to make the machine work. Should we fail to make the machine work, then we agree to take it back." Upon suit being brought on one of the notes given for the purchase money the defendant plead the warranty and breach, and made a counter claim for loss of time for himself, two hands, and team, loss of grain out of crop caused by delay in harvesting, in being compelled to hire extra help and another machine to harvest said grain, and for money paid on said machine. Verdict and judgment for defendant. On error, *Held*, That by the last clause of the warranty the vendee's damages were limited to the recovery back of the money paid on the contract.

3. ———: WARRANTY: RATIFICATION. The contract of warranty above set out was signed by dealers who in point of fact

were the agents of the plaintiff, but they used their firm name and not the name of the plaintiff, nor did they describe themselves as agents. The notes for the machine were drawn payable directly to the plaintiff, and suit thereon brought in its name. *Held,* That the giving of the warranty and taking of the notes being parts of the same transaction, the claiming of property in and bringing suit on the note was a ratification of the warranty by the plaintiff.

ERROR to the district court for Hall county. Tried below before POST, J.

*Batty & Ragan* for plaintiff in error.

Contract of Stabler & Deisher was not binding on plaintiff. 1 Parsons on Contracts, 54. *Long v. Colburn,* 11 Mass., 97. *Magill v. Hinsdale,* 6 Conn., 464. *Hancock v. Fairfield,* 30 Me., 299. *Merchant's Bank v. Hayes,* 7 Hun., 530. *Hayes v. Crutcher,* 54 Ind., 260. On question of warranty cited: *Nichols v. Hail,* 4 Neb., 210. *Edgerly v. Gardner,* 9 Neb., 130. On damages, cited: Field, 266, 275. *Crosby v. Watkins,* 12 Cal., 85. *Hamilton v. McPherson,* 28 New York, 72. *McClary v. S. C. & P. R. R.,* 3 Neb., 54. *Berry v. Dwinel,* 44 Me., 255.

*Thompson Brothers,* for defendant in error.

On question of agency, cited: 2 Smith's Leading Cases, 432. Story on Agency, 259. *Lawrence v. Taylor,* 5 Hill, 107. Story on Sales, sec. 77. *Hovey v. Blanchard,* 13 New Hamp., 145. *Woodbury v. Larned,* 5 Minn., 339. On damages: *Kelley v. Peterson,* 9 Neb., 81. *Baldwin v. Blanchard,* 15 Minn., 489. Field, 238, *et seq. Hadley v. Baxendale,* 9 Exch., 341.

COBB, J.

This action was brought on a promissory note executed by the defendant in error to the plaintiff in error, for the

sum of fifty dollars and interest. In the court below the defendant answered that the note sued on was made and executed to the said plaintiff on a contract made and executed between Stabler & Deisher as agents of the plaintiff and the defendant. That by virtue of said contract, said plaintiff conditionally sold and delivered to said defendant a certain combined reaper and mower; that at the time of making said contract, said plaintiff agreed to set said machine up in running order, by the time said defendant's grain of 1878 was ready to be harvested, which it utterly refused and neglected to do after said defendant had given them due notice that said grain was ripe; that at the time of entering into contract above mentioned, the plaintiff by its agents, Stabler & Deisher, gave a warranty to said defendant as follows, to-wit:

"HASTINGS, NEB. SEPT. 5, 1877.

"We warrant Wheeler No. 6, combined reaper and mower, bought of us, to be a good grain cutting machine and a good mowing machine. Should the machine fail to do as warranted, then and in that case we are to be notified and given time to make the machine work. Should we fail to make the machine work, then we agree to take it back.

"STABLER & DEISHER."

That said machine was not a good grain cutting machine; that plaintiff was notified by said defendant and given time to make said machine work; that said plaintiff refused and neglected and entirely failed to make said machine work; that said plaintiff having failed and neglected to make said machine work as it agreed, said defendant gave said plaintiff due notice to take it back; that said machine has ever since been at plaintiff's disposal and subject to its order, etc. The said answer also contains a counter claim on the part of said defendant, wherein, after repeating the terms of agreement of the said plaintiff to set up said machine in good running order in due time to cut and harvest defendant's grain of 1878, the giving of due notice by the

defendant to the plaintiff that the said grain would be ready to harvest in a few days thereafter, and that said plaintiff would be expected to fulfill its aforesaid agreement, which the said plainitiff entirely neglected and failed to do; alleges that said defendant, by reason of the above mentioned neglect and failure on the part of the plaintiff to perform its part of the contract, after using all due diligence sustained the following damages, to-wit:

1. In loss of time for himself, two hands, and one team in the sum of $50.00.

2. In loss of grain out of crops of 1878, three bushels to each acre on 60 acres, worth $108.00.

3. In being compelled to hire extra help and another machine to harvest said grain of 1878, in the sum of $35.00.

4. That said plaintiff now owes this defendant for money had and received on or about the 1st day of January 1878, the sum of $30.50, with interest at the rate of 10 per cent per annum, etc.

The cause was tried to a jury, who returned a verdict for the defendant for $100.00, for which sum judgment was rendered in his favor. The plaintiff, in its motion for a new trial, as well as in its petition in error, assigns twenty-six errors. Most of these arise upon the admission of testimony objected to on the part of the plaintiff, and will not require an examination in detail in order to arrive at a disposition of the case.

The plaintiff objected to the introduction in evidence on the part of the defendant of the warranty signed by Stabler & Deisher, above set out, on the ground that it was the individual obligation of said Stabler & Deisher, and not the obligation of the plaintiff. This objection we do not think was well taken. Stabler & Deisher were the agents of the plaintiff for the sale of its harvester. They had traded one of plaintiff's harvesters for this Wheeler combined machine, presumably within its authority as agents. The notes

of the defendant for the price of the machine were taken in the name of the plaintiff, who sued upon the one described in its petition. The warranty was a part of the consideration of the notes, and by claiming the benefit of the transaction, as evidenced by the suit on one of the notes, the plaintiff is held to have ratified it in its entirety including the warranty. The authorities cited by counsel for defendant, as well as reason and justice, fully sustain this position. There was then no error in the refusal of the court below to charge the jury that the said warranty was the warranty of Stabler & Deisher, and not of the plaintiff.

The written warranty having been received in evidence, and being held to be the contract of the plaintiff, its terms, fairly construed, become the law of the case. Aside from the general principle, as stated by Mr. Justice Parker in the leading case of *Stackpole v. Arnold*, 11 Mass., 27, "that when parties have deliberately put their engagements in writing in such terms as import a legal obligation without any uncertainty as to the object or extent of such engagement, it shall be presumed that the whole engagement of the parties and the extent and manner of their undertaking was reduced to writing; so that oral testimony of a previous *colloquium* between the parties, or of conversation or declarations at the time when it was completed, or afterwards, would tend in many instances to substitute a new and different contract for the one which was really agreed upon," etc., it is equally repugnant to law and reason that a party, after having proven and availed himself of the advantage of a contract, entire in its terms and covering the whole ground, should be allowed to prove another and different one to sustain the same cause of action. Accordingly, although the testimony of the defendant of the verbal agreement of plaintiff's agents to set the machine up in good working order in time for the defendant's harvest of 1878 was not objected to or made a point in the petition in error, such agreement can

not be taken as the true contract between the parties upon which to base a recovery of damages.

The plaintiff, as shown by the written warranty, had warranted the machine in question "to be a good grain cutting machine and a good mowing machine. Should the machine fail to do as warranted, then in that case we are to be notified and given time to make the machine work. Should we fail to make the machine work, then we agree to take it back." By their verdict the jury must have found that the machine failed to do as warranted; that the plaintiff was notified and failed to make the machine work. What then was the rule of damages? There are many adjudicated cases nearly in point, but in the limited time at my disposal I have failed to find a single one entirely so. There are many cases of express and many of implied warranties, some in writing and some verbal, but I find no case where, like the present one, the warranty contains a clause of limitation upon the consequences of a failure to make the warranty good. This clause is of importance in two points of view: First, as fixing a limitation upon the warranty, and secondly, in view of the rule laid down in some of the leading cases on this subject, in showing the scope of the plaintiff's liability as contemplated by the parties when they entered into the contract.

The leading case bearing upon this subject is that of *Hadley v. Baxendale*, 26 Eng. L. & Eq. R., 398. In that case the court states the rule as follows: "When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be either such as may fairly and reasonably be considered arising naturally, that is, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. Now, if the special circumstances under

which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such a contract which they would reasonably contemplate would be the amount of injury which would ordinarily follow from a breach of contract ·under those special circumstances so known and communicated. But, on the other hand, if those special circumstances were wholly unknown to the party breaking the contract, he at the most could only be supposed to have had in his contemplation the amount of injury which would arise generally and in the great multitude of cases not affected by any special circumstances from such a breach of contract. For had the special circumstances been known, the parties might have especially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be unjust to deprive them." In the case at bar the machine was purchased and the contract of warranty entered into on the fifth day of September, 1877. The machine was a combined reaper and mower. Doubtless the immediate object of the purchase on the part of the defendant was to use it as a mower in the cutting of grass that fall. It is true the machine was warranted to be a good grain-cutting machine, and the cutting of the defendant's harvest of 1878 was contemplated and spoken of, but the amount or kind of grain that would constitute defendant's harvest of that year was neither known to himself or the plaintiff's agents at the time of entering into the contract.

In the case of *Hadley v. Baxendale, supra,* the plaintffs were the owners of a steam grist mill and contracted with the defendant, a carrier of goods by railway, to carry for hire two pieces of iron, constituting the broken shaft of a mill, and deliver the same to an artificer who lived at a considerable distance, in order to serve as a model for a new shaft to be made for them by him. The defendant having violated

his agreement by not delivering these pieces of iron within a reasonable time, a delay necessarily arose in supplying the new shaft, and a shaft being indispensable to the working of the mill, and the plaintiffs not having any other, the mill remained idle until the delivery of the new one; but although there was evidence that the defendant knew the mill was standing still, he was not aware that this was for want of the shaft for which the iron delivered to him was to serve as a model.   Baron Alderson, in the opinion of the court, says:  " We find that the only circumstances communicated by the plaintiff to the defendant at the time the contract was made were that the article to be carried was the broken shaft of a mill and that the plaintiff was the miller of that mill.   But how do these circumstances show reasonably that the profits of the mill must be stopped by an unreasonable delay in the delivery of the broken shaft by the carrier to the third person?   Suppose the plaintiff had another shaft in his possession put up, or putting up at the time, and that he only wished to send back the broken shaft to the engineer who made it, it is clear that this would be quite consistent with the above circumstances, and yet the unreasonable delay in the delivery would have no effect upon the immediate profits of the mill.   Or, again, suppose that at the time of the delivery to the carrier the machinery of the mill had been in other respects defective, then also the same result would follow.   Here it is true that the shaft was actually sent back to serve as a model for a new one, and that the want of a new one was the only cause of the stoppage of the mill, and that the loss of profits really arose from not sending down the new shaft in proper time, and that this arose from the delay in delivering the broken one to serve as a model.   But it is obvious that in the great multitude of cases of millers sending of broken shafts to third persons by a carrier under ordinary circumstances such consequences would not in all probability have occurred, and

these special circumstances were here never communicated by the plaintiff to the defendant. It follows, therefore, that the loss of profits here cannot reasonably be considered such a consequence of the breach of contract as could have been fairly and reasonably contemplated by both the parties when they made this contract; for such loss would neither have flowed naturally from the breach of this contract in the great multitude of such cases occurring under ordinary circumstances," etc.

In the case at bar had the plaintiff not limited its liability by the terms of the warranty, would such liability, upon the authority above quoted, have extended to the damages embraced in the first, second, and third paragraphs of the defendant's counter-claim? I think not. It cannot be that in a populous county of this state like Hall county, that usually and ordinarily when a farmer is disappointed in his reaper, and is obliged to obtain the use of another with which to cut his harvest, such consequences follow as those set out in the said paragraphs. Certainly, as in the case above cited, "such loss would neither have flowed naturally from the breach of this contract in the great multitude of such cases occurring under ordinary circumstances, nor were the special circumstances, which perhaps would have made it a reasonable and natural consequence of such breach of contract, communicated to or known by the" plaintiff. So I think the district court erred in refusing to instruct the jury substantially as prayed by the plaintiff in respect to the said paragraphs. This, even upon the theory that plaintiff's liability was not limited by the terms of the written warranty and the evidence of a verbal agreement on the part of the plaintiff to set up the machine in time for the harvest of 1878, etc., was properly admitted. But as we have before stated, the terms of the written warranty limited the liability of the plaintiff to taking back the machine, and of course restoring any part of the purchase price which had been paid.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.