## SANFORD v. BROWN BROS. CO.

(Supreme Court, Appellate Division, Second Department. November 19, 1909.)

1. SALES (§ 54*)—CONTRACT—CONSTRUCTION.

   Where a contract for the sale of fruit trees was prepared by the seller to be signed by the buyer, any uncertainty or ambiguity therein was to be resolved in favor of the buyer.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 152; Dec. Dig. § 54.*]

2. SALES (§ 418*)—BREACH OF CONTRACT BY SELLER—DAMAGES.

   Plaintiff ordered 3,500 peach trees, of five varieties, by an order, prepared by the seller, providing: "Any stock which does not prove to be true to name as labeled is to be replaced free or purchase price refunded." The trees were delivered, labeled, and when, in four years they commenced to bear, it was discovered that the order had been substantially complied with only as to one of the varieties ordered. Three of the varieties had not been sent at all, and over 2,700 out of the 3,500 trees were practically worthless. *Held*, that the provision quoted applied only to such mistakes as were liable to occur in the substantial performance of the contract, and did not limit plaintiff's recovery for breach thereof to the price of the trees not delivered.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. SALES (§ 405*)—NURSERY STOCK—BREACH OF CONTRACT—DAMAGES.
    A contract for the sale of nursery stock contained an implied condition
    precedent requiring substantial performance by the seller, for breach of
    which plaintiff was entitled to recover compensatory damages.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1150–1152; Dec. Dig.
    § 405.*]

Appeal from Trial Term, Orange County.

Action by Pierson E. Sanford against the Brown Bros. Company. From an order granting a nonsuit at the close of plaintiff's evidence, and from an order denying his motion for a new trial, he appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and MILLER, JJ.

M. N. Kane, for appellant.
James S. Havens, for respondent.

MILLER, J. The plaintiff ordered from the defendant the following kinds and quantities of young peach trees: Five hundred Elbertas, 500 Old Mixon, 500 Red Cheek Melocoton, 500 Susquehanna, 1,000 Crawford Late, 500 Beer Schmock—and the defendant delivered 3,500 trees, labeled to conform to the order. They were set out and cultivated by the plaintiff until they commenced to bear fruit, when it was discovered that, of the kinds ordered, only 480 Elbertas, 139 Late Crawfords, and 87 Beer Schmock trees had actually been delivered, and that the others, over 2,700 trees out of an order of 3,500, were practically worthless. The plaintiff could not discover the kind of trees delivered until they bore fruit. Had the contract been performed by the defendant, the plaintiff would have had a valuable peach orchard. As it was, after devoting his land and labor for three or four years to the enterprise, he had one of no value to him, except for the comparatively few trees conforming to the order. The order was on a printed blank form, prepared and submitted to the plaintiff for his signature by the defendant. It contained the following provision:

"Any stock which does not prove to be true to name as labeled is to be replaced free, or purchase price refunded; and all stock to be delivered in a thrifty and healthy condition."

The defendant contends that that provision is exclusive, and that the plaintiff's damages are limited to the purchase price of the trees; and the trial court so held.

The question presented is purely one of construction. We are to discover the intention of the parties from the words of the contract, and any uncertainty or ambiguity is to be resolved in favor of the plaintiff. Gillet v. Bank of America, 160 N. Y. 550, 55 N. E. 292. It is particularly just to apply that rule to contracts obtained as we all know this class of contracts usually are obtained. An agent secures an order, and then submits to the purchaser a printed contract, which the latter signs without critical—often, no doubt, without any—examination. Of course, parties to a contract should know what they are signing; but it is fair, and will often prevent fraud and imposition, to

hold the party who is responsible for the words used to a strict construction of them in favor of the other. In this case the vendee could not know, until after he had made a large investment, whether the vendor had performed its contract, while the latter had no excuse whatever for not performing. It knew with what varieties the young trees were budded, if at all, and it had only to see that they were properly labeled. Of course, in a large nursery, mistakes might occur, now and then there might be a failure to bud a tree, or to label it properly, and, as the evidence discloses, some trees get broken off below the bud, remaining "naturals," as they are called. It was to be expected, therefore, that out of a large order of 3,500 trees of six different varieties there would be some trees which did not conform to the label.

In this case there was a total failure to deliver three of the kinds ordered, a practical failure to deliver two other kinds, and a substantial delivery only of one kind, 500 out of 3,500 trees ordered. Was that the kind of breach which the above-quoted stipulation was intended to provide for, or did the parties have in mind substantial performance of the contract, with such mistakes and omissions as were likely, if not bound, to occur? I think the language used may be construed to apply to the latter supposition. Otherwise, the plaintiff contracted to place himself at the mercy of the defendant, and the courts will not adopt a construction having that effect, unless compelled to do so by the language used. Schoellkopf v. Coatsworth, 166 N. Y. 77–84, 59 N. E. 710.

The learned counsel for the respondent argues that the contract as construed by him is not unreasonable, that the nurseryman sells his stock at a small price, that mistakes are bound to occur, and that he could not do business if subjected to the danger of the rule of damages applied in the Bristol cabbage seed cases. See White v. Miller, 71 N. Y. 118, 27 Am. Rep. 13. But no doubt the contract was intended to cover the case of such mistakes as might reasonably be expected to occur; and the argument advanced points to the conclusion that it was precisely such mistakes that the defendant intended to protect itself against. Now, in this case, there was probably a substantial delivery of the 500 Elbertas, yet, if the defendant were compelled to answer for the 20 not delivered, according to the rule of the White Case, the damages would be a great deal more than the purchase price of the entire 500 trees; and so a contract limiting the damages in such a case to the purchase price of the trees not delivered would be in all respects reasonable, and, indeed, probably necessary, as the respondent argues, to enable it to do business. But, as already pointed out, the defendant can, by taking proper pains, substantially deliver what it sells; and it may safely be affirmed that no man in his senses would purchase 3,500 peach trees, and agree that he would be content with the return of the purchase price, if it should turn out, after three or four years of culture, that they were substantially all worthless, and not what he ordered.

It is pertinent to observe, as the learned counsel for the appellant points out, that the failure to deliver the thing sold is a breach of the contract, not merely a breach of warranty collateral to it. While there

was formerly a tendency in this state to confuse the two, the later cases recognize the distinction made by the English cases. See Carleton v. Lombard, Ayres & Co., 149 N. Y. 137–147, 43 N. E. 422; Waeber v. Talbot, 167 N. Y. 48–56, 60 N. E. 288, 82 Am. St. Rep. 712. For references to the English cases, see Benjamin on Sales, § 600 et seq. Now, plainly, the parties contemplated that there would be some omissions or mistakes; and, in view of the rules of construction applicable to this contract, hereinbefore referred to, I think the stipulation in question should be construed as referring only to such mistakes and omissions as were within the contemplation of the parties, and to be subject to the condition precedent, that the defendant should at least substantially perform its contract. It may be said that that reads a condition into the stipulation which is not expressed; but surely, in the absence of an express provision plainly intended to cover the case of a total or practical failure of performance, substantial performance is an implied condition precedent, and need not be expressed. The parties could have agreed upon liquidated damages, or upon some particular remedy, for any breach of the contract, in which case the remedy stipulated for would doubtless have been exclusive. But, just as the courts will construe provisions in terms for liquidated damages as having been intended to provide for a penalty, unless the language is clear and explicit and the damages contemplated "are in their nature uncertain and unascertainable with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss" (Curtis v. Van Bergh, 161 N. Y. 47, 55 N. E. 398), so this contract should not be construed as providing an exclusive remedy for any breach of it, unless the language is plain and unmistakable.

The respondent invokes the maxim, "Expressio unius est exclusio alterius," and, no doubt, it does apply. The remedy stipulated—i. e., replacing the trees or refunding the purchase price—is doubtless exclusive. But it is exclusive only in respect of the case to which it was intended to apply; i. e., substantial performance of the contract, with relatively slight and inadvertent mistakes. It may be said that implying the condition of substantial performance violates the rule; but for reasons already stated the stipulation should be held to be dependent upon the performance of that condition, in the absence of language unmistakably negativing that implication. It may be that a literal interpretation of the words used supports the respondent's contention; but the stipulation, "Any stock which does not prove to be true to name as labeled is to be replaced free, or purchase price refunded," is certainly not so plain and explicit as would have been the following: "If all, substantially all, or any part, of the stock does not prove true to name, the vendor will replace it free or refund the purchase price"—nor so unmistakable in meaning as the following simple and easily understood expression would have been: "The vendee's damages for any breach of the contract on the part of the vendor shall be limited to the purchase price." The language, "Any stock which does not prove to be true to name," may well be construed to mean any stock out of the delivery contemplated; i. e., a substantial delivery of

the stock ordered. Indeed, the stipulation is so phrased as to make an ordinary layman think that it was intended for his benefit; that, whereas, he could only expect or require substantial performance of such a contract, yet the vendor agreed to correct, or make good by refunding the purchase price, any mistake, however trivial. Very likely, few intending purchasers of nursery stock would knowingly sign contracts which unmistakably limited the damages for a practical failure of performance to the purchase price; and, if the courts are to suffer the unwary to be caught by contracts prepared and submitted as this was, it should be only when they have their own carelessness to blame—i. e., when the language of the contract is unmistakable.

The respondent relies upon the case of Bell v. Mills, 68 App. Div. 531, 74 N. Y. Supp. 224; but that case involved the breach of a collateral warranty, and the stipulation was so worded as to admit of no doubt that it was intended to cover the case of the breach of such warranty. The respondent also cites Sycamore Marsh Harvester Co. v. Sturm, 13 Neb. 210, 13 N. W. 202; but it will be found upon examination that that case falls in the class of the Bell Case.

Judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.