FANNIE E. WEYMOUTH *vs.* CHARLES E. GOODWIN.

Cumberland.    Opinion August 12, 1909.

*Contracts.   Agreement to Purchase Stock.    Offer or Tender of Stock before Suit not Necessary, When.    Statute of Frauds.   "Note or Memorandum."   Letters. Executors and Administrators.    Revised Statutes, chapter 113, section 4.*

1.  In an action to recover damages for the breach of a contract to purchase certain shares of stock, it is not necessary to allege or prove an offer or tender of the stock before suit brought, when, by the terms of the contract, the plaintiff was to hold the stock and deliver it to the defendant "when called for" by him and when in fact it never was called for.

2.  It is sufficient "note or memorandum" within the statute or frauds, if letters signed by the party to be charged or his agent, contain by·direct statement, or by reference to letters written by the other party, all the essential parts of the bargain.

3.  Letters written by the other party, and forming a part of the correspondence between them, are admissible and pertinent, if they disclose the terms of the oral contract, to which the party to be charged referred in his letters.   His reference thereto, signed by him, is a sufficient "note or memorandum" to satisfy the statute of frauds.

4.  In the case at bar, the defendant's letters, by reference therein to other letters, are deemed to constitute a sufficient "note or memorandum."

5.  It is not unlawful for an executor to transfer at par, in settlement of a legacy, stock that is worth less than par, and at the same time to agree to repurchase the stock later, at an advance price on his personal account. In such a transaction the estate can lose nothing.

On exceptions by defendant.    Overruled.

Action of assumpsit brought in the Superior Court, Cumberland County, to recover damages for breach of a contract to purchase twenty-five shares of stock of the Biddeford National Bank.    Plea, the general issue with brief statement as follows:    "That the contract declared upon and alleged in plaintiff's writ and declaration was not in writing and signed by the defendant or his agent, and no part of the goods in said writ and declaration mentioned was ever accepted by the defendant, and none of said goods were ever

received by the defendant, and the defendant did not give any-
thing in earnest to bind the bargain or in part payment thereof."

The case was heard by the Judge of said Superior Court without a
jury, who made certain findings of fact, rulings in law, and rendered
judgment for the plaintiff for $597.72.   The defendant excepted to
the rulings.

The facts, so far as material, are stated in the opinion.

*Foster & Foster*, for plaintiff.

*Geo. F. & Leroy Haley*, for defendant.

SITTING:  WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

SAVAGE, J.   Action to recover damages for breach of contract to
purchase twenty-five shares of stock of the Biddeford National Bank.
The case was heard by the Judge of the Superior Court for Cumber-
land county without a jury, who made certain findings of fact, and
rulings in law, and rendered judgment for the plaintiff.   To the
rulings, the defendant excepted.

The facts found by the court below, relating to the making of the
contract of purchase, so far as it is necessary to state them, are, in
brief, these.   The plaintiff was one of the legatees under the will of
one Almeda L. Ripley, of which the defendant was executor.   The
defendant was cashier of the Biddeford National Bank.   The bank
stock in question belonged to the estate and had been appraised at
one hundred and twenty dollars a share.   On January 22, 1906, at
a meeting between the defendant and the plaintiff's husband, who
was her agent, negotiations were had looking to a settlement of the
plaintiff's share in the estate.   The defendant proposed to turn over
the bank stock to the plaintiff, as a part of her share, at par, and
charge off the loss from the appraised value, on his account.   In fact,
the stock, at that time, was worth less than par.   The plaintiff's
husband, Mr. Weymouth, declined this proposition.   And after
further negotiations, it was orally agreed between the parties, that
the plaintiff would accept the stock at par, as part of her share of
the estate, and that the defendant, personally, and not as executor,
should repurchase the stock of the plaintiff within one year at one

hundred and twelve dollars a share, and the accrued interest at the rate of 4 % from the date of the last dividend on the stock, and that the stock should not be disposed of by the plaintiff, but should be held, and delivered to the defendant when called for by him. Later, on February 17, 1906, at another meeting, Mr. Weymouth pointed out to the defendant certain errors in his executor's account as made up. And the defendant, not wishing to change the figures in his account, agreed to purchase back the stock in question at one hundred and fifteen dollars a share, instead of one hundred and twelve dollars. The three dollars was added to off-set the errors in defendant's account, as claimed by the plaintiff. No other modification of the oral contract of January 22 was made. At this meeting on February 17, the plaintiff agreed to accept a definite stated amount as her share in the estate, and the defendant agreed to reduce to writing and sign his contract for the purchase of the stock as hereinbefore set forth, and send the written contract to the plaintiff. The consideration for the defendant's promise is found to be that the arrangement entered into "would relieve him of embarassment and remove certain obstacles to his early settlement of the estate." The defendant afterwards delivered the stock to the plaintiff in settlement of her share in the estate, but he never signed or delivered to her the contract for a repurchase, reduced to writing, as he had agreed to do.

The plaintiff alleged and the court found that she has at all times been ready and willing to perform her part of the contract, and has requested the defendant to perform on his part. But the plaintiff has not alleged nor proved an offer or tender of the stock to the defendant within one year from February 17, 1906, or at any other time. The court below ruled that the plaintiff was not bound to allege or prove such an offer or tender, and the correctness of this ruling is challenged by the defendant.

The ruling was right. This case does not fall into the class of cases cited by the defendant which hold that a plaintiff, suing upon a mutual contract of purchase on the one hand, and sale and delivery on the other, is bound to show an offer to perform on his own part, before he can maintain his action. By the terms of the contract

itself the plaintiff was bound to deliver the stock only when "called for" by the defendant. It never was "called for." Therefore the plaintiff had no occasion to offer or tender. The first step must have come from the other side. Allegations and proof that she was ready and willing to deliver the stock were all that was required in the case of this contract. *Low* v. *Marshall*, 17 Maine, 232; *White* v. *Mann*, 26 Maine, 361.

Next, the defendant contends that the oral contract relied upon is within the statute of frauds and hence invalid, because of the want of "a note or memorandum thereof made and signed by the defendant or his agent." R. S., c. 113, s. 4. The court below ruled that the correspondence introduced as evidence, all of which is set forth in the bill of exceptions, "is, without resort to extraneous proof, a sufficient note or memorandum to satisfy the statute of frauds."

It is well settled that the "note or memorandum" called for by the statute of frauds is not required to be found in a single writing. It may be supplied by documents, letters, telegrams and memoranda written and signed at various times. It may be gathered from a protracted correspondence if the letters are so connected as fairly to constitute one writing. It is sufficient, if the letters or other writings, signed by the party to be charged, or his agent, contain by statement, or by reference to others of the writings, all the essential parts of the bargain. *Kingsley* v. *Siebrecht*, 92 Maine, 23; *Lerned* v. *Wannemacher*, 9 Allen, 412; *Peck* v. *Vandemark*, 99 N. Y. 29; *Hickey* v. *Dole*, 66 N. H. 336. And even letters written to a third party may supply the memorandum. *Hickey* v. *Dole*, supra.

It is settled, too, that the note or memorandum is not the contract, but is evidence of it. The language of the statute implies that an oral contract may be made first, and a memorandum of it given afterwards. *Bird* v. *Munroe*, 66 Maine, 337. And in *Bird* v. *Munroe*, it was also held that the statute was satisfied by a memorandum made after there had been a breach of the contract.

We think the correspondence shows a sufficient memorandum to satisfy the statute. On February 21, 1906, the defendant wrote to Mr. Weymouth enclosing a check for the cash payment of the plain-

tiff's share in the estate, "as agreed upon." In the letter he said, "Later I will have a receipt made to cover the full amount and certificate of stock in this bank for twenty five shares." Two days later; Mr. Weymouth wrote a letter to the defendant, in which he recited fully and precisely the details of the oral contract for the purchase of the stock. And he added,—"If this is not all in accordance with your understanding of the agreement, please advise me at once. March 6, 1906, Mr. Weymouth again wrote to the defendant urging an early settlement. In the letter he said,— "Will you not please mail in to me the stock as we have talked, with the agreement attached, and a receipt in full, and I will promptly return you the receipt properly signed." March 8, 1906, the defendant wrote to Mr. Weymouth, "Yours rec'd and noted. The certificate for 25 shares of this bank has been made in the name of Fannie Emma Weymouth (plaintiff) . . . The matter between us will be all right . . . ." The next day Mr. Weymouth wrote to the defendant calling attention to "the agreement you and I made," and said also, "I only want simply what we agreed upon, nothing more, and get the matter off my mind, for I have a good many things to think of." March 10 the defendant enclosed the certificate of stock in a letter to Mr. Weymouth, saying in the letter "I enclose the certificate for twenty five shares of the stock in this bank which you bought at par for Mrs. Weymouth. . . . As you have so much on your mind, and can't accept any letter I may send you, for my convenience or yours, I concluded to send you the document so you would be easy." May 26, 1906 the defendant's attorney in the probate matter, at the solicitation of Mr. Weymouth, wrote the defendant a letter in which he referred to "an agreement which you had made in reference to some sale or purchase of stock." To this letter the defendant replied by letter, "Yours rec'd and noted. . . . I will say that I will sign any agreement that I have written him (Weymouth) about, and will do everything that will be right in the case."

To the admission of the letters written by Mrs. Weymouth the defendant objected on the ground that they were self serving. But this objection does not apply to this case. All Mrs. Weymouth's

letters are admissible and pertinent, if they disclose the terms of an oral contract, to which the defendant referred in his letters.   His reference thereto signed by him would be a "note or memorandum" which would satisfy the statute of frauds.   See cases cited supra.

The defendant in his letters seems carefully to have avoided any reference *in terms* to that part of the agreement which related to the purchase of the bank stock.   But we think his letters do substantially refer to this agreement.   After receiving from Mr. Weymouth one letter in which the terms of the agreement were detailed, and another asking him to mail the stock "with the agreement attached," he replied, — "The matter between us will be all right."   This was not mere silence.   It was not a mere omission to refer to the agreement.   On the other hand it can mean nothing else than a reference to the agreement which the defendant had agreed to write out and sign, and which Mr. Weymouth had been writing about, and in his letters had recited.   There is disclosed no other "matter" to be made "all right."   In view of the letters of Mr. Weymouth, it is not sensible to say that the defendant in his reply referred merely to the delivery of the stock to Mrs. Weymouth, and not to his agreement to repurchase.   In Mr. Weymouth's complaints, the two had been inseparable.

Again in his letter to his attorney, he said "I will sign any agreement that I have written about."   He had been writing, as we have seen, about the agreement in question, though in veiled phrases. This, too, was a sufficient memorandum to satisfy the statute.   The ruling of the court below was right.

There is nothing in the suggestion that, inasmuch as the plaintiff had alleged in her declaration an oral contract, and that the defendant had promised to reduce it to writing and sign it and that he had failed to do so, the declaration itself showed that the contract was within the statute of frauds.   This might all be true, and yet a later memorandum, as we have seen, might take the contract out of the statute.

Lastly, the defendant at the trial contended that the contract was illegal, and could not be enforced, and to the overruling of this defense, he excepted.   The defendant's counsel in their brief

have stated their contention in the following words,—"The contract alleged was a contract whereby the plaintiff was to purchase 25 shares of stock for $2500 which the defendant held as executor, and which stock was appraised in the inventory at $3000. The executor was charged in his probate account for its appraised value, and was to charge the estate with a loss of $500 on the stock, and was then to buy it back from the plaintiff for $2825, making a profit to the plaintiff of $325 and a profit to the defendant as executor of $175 and a loss to the estate of $500." It is accordingly contended that the defendant was attempting to act in a double capacity, when he bargained as executor for the sale of the stock, and in the same contract agreed to purchase it back and charge the estate with a loss, and that he could not lawfully at the same time be a seller and a purchaser.

We do not understand the situation as the defendant's counsel do. At the time the contract with the plaintiff was made, the stock, though it had been appraised at $120 a share, was not worth par. But in consideration of the defendant's promise to repurchase, the plaintiff agreed to take it, and did take it at par. There was a loss of $500 from the appraisal, but this was due, not to the contract, but to the lack of actual value in the stock itself. Such a loss would have to be borne by the estate, and the executor, if without fault, might properly credit himself in his account with the loss. So the estate lost nothing, on account of this contract.

But the defendant, for his own reasons, in order to avoid embarrassment, and secure an early settlement of the estate, was willing to repurchase the stock at an advance, on his own account, if the plaintiff would consent to take the stock at par. We see nothing illegal in this. It did not affect the estate, except that as the plaintiff allowed her share to be satisfied with stock at greater than its actual value, it left so much more for other legatees. The only one who stood to lose was the defendant, and he was willing to take the chance. We think he must abide his choice.

*Exceptions overruled.*