EDITH H. MCALPINE, et al., *vs.* ALICE C. MCALPINE.

Cumberland.   Opinion October 3, 1917.

*Marriage settlements.   Ante-nuptial contracts.   Equity.*

The following ante-nuptial agreement and contract entered into by Alice C. Moore of Portland, Maine, party of one part, and Silas H. McAlpine of Portland, Maine, part of the other part, witnesseth:

Whereas the said Silas H. McAlpine has promised to marry the said Alice C. Moore, the said Alice C. Moore in consideration of the promise of marriage as above and of the sum of Five Thousand Dollars to be paid to her from the estate of the said Silas H. McAlpine in case of the decease after marriage of said Silas H. McAlpine prior to the decease of the said Alice C. Moore agrees to release and relinquish and does hereby release and relinquish any and all claims of every name and nature upon the residue of the estate of the said Silas H. McAlpine, which, (except for this agreement and contract) as the widow of the said Silas H. McAlpine, she would have under the laws of the State of Maine or of any other State of the United States or of any foreign country. And she further agrees to sign all papers and perform all acts necessary to carry this contract and agreement into execution. The said sum of Five Thousand

Dollars as above shall be paid to her as soon after the decease of the said Silas H. McAlpine as can be done without unreasonable sacrifice of property in raising that amount of money.

In witness whereof the parties have hereunto set their hands and seals this sixth day of January, A. D. 1900.

|  |  |  |
|---|---|---|
| (Signed) | Alice C. Moore, | (Seal) |
| (Signed) | Silas H. McAlpine. | (Seal) |

State of Maine,   ⎫
Cumberland,      ⎬ ss.
           ⎭

Personally appeared the parties to the above agreement and acknowledged that the same is their free act and deed before me this sixth day of January, A. D. 1900.

                  (Signed)       GEORGE W. VERRILL,
                                     Justice of the Peace.

*Held*:

1. This agreement was not a statutory marriage settlement, not being executed in the presence of two witnesses according to statute.

2. That the provision of R. S., 1903, Chap. 63, Sec. 6, (R. S., 1916, Chap. 66, (Sec. 8) is not an exclusive statute, and that before marriage a husband and wife may enter into an ante-nuptial agreement that will be binding in equity upon the parties.

3. That ante-nuptial contracts between persons contemplating marriage, settling prospective rights of the husband and wife in each other's property when the marriage is terminated by death are valid contracts, independent of the statutes, and are enforcible in the courts of equity.

Bill in equity asking for specific performance and also praying for an injunction. The cause was heard before single Justice upon bill, demurrer and answer, and sent to Law Court upon report. Bill sustained with costs. Decree in accordance with opinion.

Case stated in opinion.

*Peabody & Peabody*, for plaintiffs.

*Coombs & Gould*, for defendant.

SITTING: CORNISH, C. J., KING, BIRD, HALEY, PHILBROOK, JJ.

HALEY, J. A bill in equity asking for the specific performance of an ante-nuptial agreement, and for an injunction restraining the defendant from prosecuting a petition for an allowance filed by her

in the Probate Court for Cumberland county. The defendant filed a general demurrer to the bill, and an answer admitting all the facts alleged in the bill; the case is before this court upon report.

The plaintiffs are the children of Silas H. McAlpine, late of Portland, County of Cumberland, who died intestate March 14, 1916, one of said children being the administratrix of the deceased. The defendant is the widow of the said Silas H. McAlpine. On January 6, 1900, Silas H. McAlpine, then a widower, and the defendant, then Alice C. Moore, both more than twenty-one years of age, being engaged to be married, executed an ante-nuptial contract, by the terms whereof in consideration of the mutual promises to marry and of the sum of five thousand dollars the defendant "agreed to release and relinquish, and does hereby release and relinquish, any and all claims of every name and nature upon the residue of the estate of said Silas H. McAlpine which, except for this agreement and contract as the widow of said Silas H. McAlpine she would have under the law of the State of Maine, or any other state of the United States or of any foreign country. . . . . And she further agrees to sign all papers, and perform all acts, necessary to carry this contract into execution." It was provided that the $5000 named in the agreement should be paid the widow after the decease of said Silas H. McAlpine.

The contract was acknowledged as the free act and deed of both parties the day of its date, January 6, 1900, but was not executed in the presence of two witnesses, as required by Sec. 6, Chap. 63, R. S., 1903. (R. S. 1916, Chap. 66, Sec. 8), which provides how a marriage settlement shall be executed. January 17, 1900, the parties were married and lived together as husband and wife until Mr. McAlpine's decease March 14, 1916.

The inventory filed in the Probate Court shows that the estate of Mr. McAlpine was appraised, real estate $3000, personal estate, $19,366.77. March 22, 1916, the administratrix of Silas H. McAlpine offered to pay to the defendant the sum of $5000, according to the terms of said agreement, which the defendant refused to receive and release the estate from all claims according to said agreement. April 25, 1916, the defendant filed in the Probate Court for Cumberland County a petition for an allowance as widow out of the personal estate of said deceased, upon which notice was ordered, and this suit is brought to enforce the ante-nuptial contract dated January 6, 1900,

and prays that the defendant be ordered to perform said contract and to execute and deliver to the administratrix a release of all her distributive share of the estate and all claims as widow, including her claim for a widow's allowance, and for other appropriate relief. The $5000 tendered to the defendant was paid into court when the bill was filed. The only issue in the case is the validity and construction of the ante-nuptial agreement above referred to.

The statute under which the defendant claims the agreement was executed was Sec. 6, of Chap. 63, revision of 1903, and so much thereof as is material reads as follows: "But a husband and wife, by a marriage settlement executed in presence of two witnesses before marriage, may determine what rights each shall have in the other's estate during the marriage, and after its dissolution by death, and may bar each other of all rights in their respective estates not so secured to them."

It is the claim of the defendant that, as the statute above quoted provides that the agrement to bar the widow's right in the real estate of her deceased husband must be executed in the presence of two witnesses, and as the paper executed by the defendant was not executed in the presence of any witness, that it is not a bar; that the widow can be barred only in the manner prescribed by the statute; that the statutes are exclusive and render all other forms of ante-nuptial agreements void and consequently unenforcible in equity. It is admitted that the agreement was not a statutory marriage settlement, as it does not appear to have been executed in the presence of two witnesses; nor is it claimed to be a jointure in its technical legal sense, and it is not pretended that it is of itself a legal bar since it distinctly provides for the further execution of such papers as may be necessary to make its terms effective in law. It is an ante-nuptial contract, an agreement made by two parties under no disability, both being *sui juris*. The agreement is not a bar to an action at law by the widow to recover her distributive share of her deceased husband's estate as it was not fully executed. It provided that the wife should execute the necessary papers to complete it.

In *Bright* v. *Chapman*, 105 Maine, 62, the court in discussing the statute above referred to said, "It does not follow that the section quoted covers the whole field of marriage settlements, On the contrary, it is clear that marriage settlements may be made to contain agreements as to matters growing out of the marriage relations other

than rights in the estate of one or the other. . . . . Equity will enforce such ante-nuptial settlements." Practically the same question involved in this case was discussed in 1751 in the case of *Buckinghamshire* v. *Diury*, 2 Ed., 39, 60; in which Lord Hardwick said: "The next thing is the consideration of equity, whether the jointure, or an equivalent to it, will not bind in a court of equity. . . . The general rule is, equity follows the law in the substance, though not in the mode and circumstances of the case. Therefore, if that has been done which is equivalent to what the law would call a jointure or conveyance of any other nature, it will bind in equity. . . . . This is built on maxims of equity, which regards the substance and not the form. What for good consideration is agreed to be done, is considered as done, and allowed all the consequences and effect as if actually done; especially if the condition of the parties is changed, for that cannot be rescinded; so what is fairly done before ought to be established . . . . Equity has therefore held, that where such provision has been made before marriage, out of any of these, she shall be bound by it. . . . . If anything can be clear in equity, it is this: If such agreements are fairly entered into, they will be decreed." It is true, as argued, that the statute upon which the respondent relies is the exclusive way provided by statute for barring the widow's right of inheritance in her husband's estate. That is, it is the only legal defense that can be offered in an action at law brought by her for her share of his estate, that is given her by the statute. It was so held in *Littlefield* v. *Paul*, 69 Maine, 527, which was an action of dower, and in *Wentworth* v. *Wentworth*, 69 Maine, 247, which was an action for dower and an appeal from an allowance made by the Judge of Probate. And the general rule was recognized in *Pinkham* v. *Pinkham*, 95 Maine, 71, which was a writ of entry, where the agreement relied upon was executed during coverture. The court in these cases where it was held that the statute was exclusive was discussing actions at law.

In nearly all the courts of this country where the validity of agreements similar to the agreement in this case has been passed upon, it has been held that the statute was not exclusive, but simply a statutory declaration that parties about to be married could, by executing a contract as prescribed by statute, bar the woman's interest in her husband's estate, and that statutes similar to ours do not deprive her of the power to bar her rights in her husband's estate by her ante-

nuptial agreements, that the statute is but a declaration of the effects of the settlement in that class of cases. As said in *Freeland* v. *Freeland*, 128 Mass., 509, in construing a somewhat similar contract: "This is a valid contract under the General Statutes, . . . . So far as it relates to the interest of either of the parties to the intended marriage in the estate of the other during coverture. So far as it relates to the rights of the survivor in the estate of the other after the termination of the marriage relation by death, *it is valid, independently of the statute.*" *Jenkins, Admr.,* v. *Holt,* 109 Mass., 116, was a bill in equity brought to enforce the specific performance of a marriage contract by which the defendant covenanted not to claim dower or any distributive share of her intended husband's estate, and the court said: "The validity of such a contract, and the power of a court of equity to enforce its specific performance, has been fully recognized by this court." The defendant in that case claimed the contract was void because it was not recorded as required by the General Statutes, and the court said: "The contract here sought to be enforced relates only to the rights which the survivor may claim in the estate of the other when the marriage is terminated by death. Its validity *does not* depend on the statute. It is as independent in its provisions, as a strict settlement by jointure or a pecuniary provision assented to by her in lieu of dower, and these have long been recognized as valid antenuptial agreements."

In *Riegar* v. *Schaidle,* 81 Neb., 33, and also reported in 17 L. R. A. (N. S.) 866, the court reviewed at length the decisions as to the ante-nuptial contracts and shows that the great weight of authority in this country is that ante-nuptial contracts between persons contemplating marriage, settling prospective rights of the wife in the property of the husband, when the marriage is terminated by death, are valid, independently of the statutes, and will be enforced by the equity courts. And in *Kennedy* v. *Kennedy,* 150 Ind., 633, the contract did not comply with the statute, and the court said: "No. principle seems to be more fully settled at the present time than that an adult woman, before her marriage, may bar her legal rights in her husband's estate by her agreement to accept any other provisions in lieu thereof; and such an agreement will be upheld and enforced by the courts, in the absence of fraud or imposition upon her, and where it may be said, under the particular circumstances, that it is not unconscionable." Also *Logan* v. *Phillips,* 18 Mo., 22, and cases cited in *Riegar* v. *Schaidle,* supra.

From an examination of the authorities there can be no question but that the contract signed by the plaintiff in this case was a valid contract, and barred her right by descent to share in the real or personal estate of her husband.  But it is urged that she is not barred from petitioning for an allowance from the estate.  It was held in *Riegar* v. *Schaidle*, supra, that if the ante-nuptial contract was valid and enforcible, it should be given full effect, and the widow denied any interest in, or any part of, the husband's estate.  By the terms of that contract her dower interest was barred by contract prior to marriage, on the same principle the allowance awarded the widow by statute would also be barred, and the same in this case, that the agreement being valid and enforcible, it bars her right to an allowance as it bars her right to share in the estate by descent.  In *Bright* v. *Chapman*, supra, it was held that a marriage settlement, no broader than the contract in this case, included a claim of the widow for an allowance, and that equity would enjoin the prosecution of the petition for an allowance.

There being no pretense of any fraud or imposition in procuring the contract; the consideration therefor being adequate; its terms not being unreasonable; the parties, at the date of its execution, being competent to contract, and they having partially performed the terms thereof, the death of Silas H. McAlpine fixed the rights of the defendant in his estate according to the terms of the contract, and equity will decree that the defendant execute the necessary instruments to carry out the provisions of the contract.  The five thousand dollars deposited with the clerk by the administrator should be paid the defendant as the amount due her by the terms of the contract.

*Bill sustained with costs.  Decree
in accordance with the opinion.*