SARAH STEARNS SMITH ET AL. *vs*. WILLIAM H. FARRINGTON.

Cumberland.   Opinion, November 17, 1942.

242

*Lauren M. Sanborn,* for the plaintiffs.

*Edgar F. Corliss,* for the defendant.

SITTING: STURGIS, C.J., THAXTER, HUDSON, MANSER, MURCHIE, JJ.

HUDSON, J.    On report. In this bill in equity the plaintiffs (executrix, devisees, and legatees under the will of Avis A. Farrington, deceased wife of the. defendant) seek specific performance of an alleged antenuptial agreement. The defendant filed a general demurrer which joined raises the issue whether the bill sets forth facts justifying relief in equity. *Whitehouse Equity Practice,* Sec. 331, page 363.

The facts alleged in the bill may be stated briefly. On December 16, 1931, the defendant, a widower, married Avis A. Stearns, a widow, each having living children by former marriages. Following their engagement but before marriage they made a verbal agreement providing that neither should share in nor partake of the estate of the other but that each should

dispose of his or her respective estate by giving or devising the same to his or her respective children by former marriage or in such other manner as each party might see fit. On December 21, 1939, during coverture they signed a written agreement, executed before two witnesses and acknowledged before a notary public. In this it was stated:

"Whereas we, the parties hereto, prior to our marriage, verbally agreed that upon our respective deaths, neither should share in, nor partake of, the estate of the other, but that each should dispose of his or her respective estate by giving or devising the same to his or her respective children by a former marriage, or in such other manner as each party hereto might see fit; and whereas we are desirous of reducing our said agreement to writing that the same may be evidence of our said agreement," (meaning the verbal agreement before marriage) "now therefore:—"

Then followed mutual releases in accordance with the verbal antenuptial agreement.

Mrs. Farrington predeceased her husband, who now refuses to abide by and carry out the terms of the antenuptial agreement. First he contends (and we think rightly) that the antenuptial agreement did not conform to the provisions of Sec. 8 of Chap. 74, R. S. 1930, namely:

". . . but a husband and wife, by a marriage settlement executed in presence of two witnesses before marriage, may determine what rights each shall have in the other's estate during the marriage, and after its dissolution by death, and may bar each other of all rights in their respective estates not so secured to them."

But this Court has held that that statute is not exclusive and that there may be valid antenuptial contracts independently of it which are enforceable in courts of equity. *McAlpine* v.

*McAlpine*, 116 Me., 321, 101 A., 1021. This Court said on page 325:

> "In nearly all the courts of this country where the validity of agreements similar to the agreement in this case has been passed upon, it has been held that the statute was not exclusive, but simply a statutory declaration that parties about to be married could, by executing a contract as prescribed by statute, bar the woman's interest in her husband's estate, and that statutes similar to ours do not deprive her of the power to bar her rights in her husband's estate by her ante-nuptial agreements, that the statute is but a declaration of the effects of the settlement in that class of cases."

In the McAlpine case, supra, distinction is drawn between actions at law and suits in equity where enforcement of the oral contract is sought. Thus, therein on page 325 were distinguished the decisions in *Littlefield* v. *Paul*, 69 Me., 527, *Wentworth* v. *Wentworth*, 69 Me., 247, and *Pinkham* v. *Pinkham*, 95 Me., 71, 49 A., 48, 85 Am. St. Rep., 392. The McAlpine case holds clearly that an antenuptial contract, where it is made without fraud or imposition and is not unconscionable, will be enforced in equity although it does not conform to the statute above cited.

Here there is no pretence of any fraud or imposition in procuring the antenuptial contract. Their mutual promises were sufficient consideration. The terms of the contract were not unreasonable and both parties were competent to contract. The agreement was conscionable, fair, and proper, confirmed and abided by during the marriage, and now that death has taken one of the contracting parties, the wife, it would be most inequitable to permit the surviving husband to violate his contract.

> "Almost any *bona fide* antenuptial contract made to secure the wife, either in the enjoyment of her own prop-

erty or a portion of that of her husband, either during coverture or after his death, will be enforced in equity." *Wentworth* v. *Wentworth*, supra, on page 252.

"Such family arrangements, in many instances, reconcile differences and avoid unpleasant disputes. Where they are free from fraud, there is no reason why they should not be enforced." *Tiernan* v. *Binns et al., Executors*, 92 Penn. St., 248, 253.

Judge Cardozo said in *De Cicco* v. *Schweizer et al.*, 221 N. Y., 431, 117 N. E., 807, on page 810:

"The law favors marriage settlements, and seeks to uphold them. It puts them for many purposes in a class by themselves. . . . It has enforced them at times where consideration, if present at all, has been dependent upon doubtful inference. . . . It strains, if need be, to the uttermost the interpretation of equivocal words and conduct in the effort to hold men to the honorable fulfillment of engagements designed to influence in their deepest relations the lives of others."

Secondly, the defendant contends that the oral antenuptial agreement violates the statute of frauds. Our statute of frauds (see Sec. 1 of Chap. 123, R. S. 1930) provides:

"No action shall be maintained in any of the following cases:

\*  \*  \*

"III. To charge any person upon an agreement made in consideration of marriage;

"IV. Upon any contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them;

\*  \*  \*

"Unless the promise, contract, or agreement, on which such action is brought, *or some memorandum or note thereof,* is in writing and signed by the party to be charged

therewith, or by some person thereunto lawfully authorized; but the consideration thereof need not be expressed therein, and may be proved otherwise." (Italics ours.)

The defendant claims that this antenuptial agreement was in consideration of marriage and not being in writing is void. Whether this agreement was actually made in consideration of marriage we do not find it necessary to decide, since for the purpose of our consideration it will be assumed that it was. That being so, does the statute constitute a defense in this action? We think not. We regard the written agreement of December 21, 1939, an entirely sufficient memorandum or note to comply with the statute.

In the case of *McAnulty* v. *McAnulty*, 120 Ill., 26, 11 N. E., 397, 60 Am. St. Rep., 552, relied upon by the defendant, there was no such provision as to a memorandum or note. Therein the statute provided only that "no action shall be brought . . . to charge . . . any person upon any agreement made upon consideration of marriage," unless the promise or agreement shall be in writing. The Court said, ". . . the statute requires the *contract* itself to be in writing."

The defendant also relies on *Rowell* v. *Barber*, 142 Wis., 304, 125 N. W., 937, 27 L. R. A., N. S., 1140, in which it was held that an "oral agreement entered into before marriage by being reduced to writing and signed after marriage" did not become "a valid antenuptial contract." The Court based its decision on the ground that the oral agreement was absolutely void and that that which was void could not be validated by a writing made during coverture. The Court distinguished its statute from the "English statute and those of most of the other states of the Union" which did not make the oral contract void but simply provided that "no action shall be brought . . . ." Our statute, as above noted, does not make the oral agreement void but instead provides that "no action shall be maintained. . . ." Thus, the cited case and the instant case are distinguishable.

A checking of our statute back through the revisions to the original enactment in 1821 (see Chap. LIII) shows that no such agreement has ever been declared to be void. In the original enactment the statute provided (see Sec. 1 of Chap. LIII):

> "That no action shall be brought whereby . . . to charge any person upon any agreement made upon consideration of marriage, . . . and no action shall hereafter be maintained upon any contract for the sale of land, tenements or hereditaments, or any interest in, or concerning the same, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

Thus, for 121 years our statute in this regard has remained the same in effect as it now is. Our statute does not pretend to invalidate the original oral contract but only prevents maintenance of an action upon it unless it is in writing or unless there is some memorandum or note thereof in writing.

The memorandum or note does not constitute a new contract; it simply makes enforceable the original contract, although oral. In discussing the statute of frauds which had to do with the sale of goods, Judge Peters said in *Bird* v. *Munroe*, 66 Me., 337, on page 341, 22 Am. Rep., 571:

> "The point raised is, whether, in view of the statute of frauds, the writing in this case shall be considered as constituting the contract itself or at any rate any substantial portion of it, or whether it may be regarded as merely the necessary legal evidence by means of which the prior unwritten contract may be proved. In other words, is the writing the contract, or only evidence of it; we incline to the latter view."

This language he used even though in that statute the language was: "No contract for the sale of any goods, wares, or mer-

chandise . . . shall be valid, unless . . . some note or memorandum thereof is made and signed by the party to be charged thereby, or his agent." The Court held that the words "shall be valid" meant, however, that no such contract without memorandum shall be maintained.

Likewise, in *Weymouth* v. *Goodwin*, 105 Me., 510, 75 A., 61, 63, following *Bird* v. *Munroe*, supra, it is stated: "It is settled, too, that the note or memorandum is not the contract, but is evidence of it. The language of the statute implies that an oral contract may be made first, and a memorandum of it given afterwards." In *Upton & Co.* v. *Colbath*, 122 Me., 188, 119 A., 384, it is said on page 197: "Its purpose is to express the terms of the original trade and is evidence by which that trade can be proved." In the instant case Mr. and Mrs. Farrington over their own signatures to the agreement subsequently made to the antenuptial agreement confirmed it, stated what its original terms were, and in effect said that the purpose of making the subsequent memorandum was to reduce the oral agreement to writing, not that the memorandum should be the contract itself but that it might be "evidence of our said agreement," meaning the antenuptial oral agreement.

The memorandum may be made during the marriage. ". . . it is generally held that a verbal antenuptial contract may be reduced to writing or be evidenced by a written memorandum after the marriage so as to render it, when properly signed, valid and enforceable as between the parties and persons claiming under them." 27 C. J., Sec. 312, page 264. *Moore* v. *Harrison*, 26 Ind. App., 408, 59 N. E., 1077, 1078; *Kohl* v. *Frederick*, 115 Iowa, 517, 88 N. W., 1055; and *Browne on the Statute of Frauds*, Fifth Edition, Sec. 224, on page 296. It is necessary only that the written evidence of the contract necessary to satisfy the statute of frauds must be in existence at the time the action is brought. *Bird* v. *Munroe*, supra; *Purdom Naval Stores Co.* v. *Western Union Tel. Co.*, 153 F., 327, 330.

In conclusion we hold that the bill in this case did set forth facts that would justify the relief sought in equity, and that

the demurrer was not sustainable. The parties in reporting the case to this Court stipulated ". . . that if the demurrer is overruled, the bill may be sustained and decree entered below in accordance with the prayers contained in the bill."

> *Bill sustained. Case remanded to the court below for entry of a decree in accordance with the prayers contained in the bill.*