MAX UHLIG v. EDWIN BARNUM.

FILED JANUARY 17, 1895.    No. 5728.

1. **Contracts:** CONSTRUCTION. A agreed to put into the hotel of B a hot air furnace, and contracted that all work should be done in a workmanlike manner. *Held*, That this contract required that the furnace should be so constructed as not to expose the building to danger from fire when the furnace was used by a person of ordinary prudence in the usual manner.

2. ———: EVIDENCE. One cold air box took fire and there was evidence tending to show that this was because the valves were so arranged that air forced into the other box drove the hot air back into the one which ignited. The evidence tended to show that in so arranging the valves the owner followed the instructions given by those who sold the furnace and placed it in the building. *Held*, That the jury was justified in finding that the owner had used the furnace in a reasonably prudent manner.

3. ———: SUPPLEMENTARY CONTRACTS. A new contract with reference to the subject-matter of a former one does not supersede the former and destroy its obligations, except in so far as the new one is inconsistent therewith, when it is evident from an inspection of the contracts and from an examination of the circumstances that the parties did not intend the new contract to supersede the old, but intended it as supplementary thereto.

4. **Damages:** BREACH OF CONTRACT. Where two parties have made a contract which one of them has broken, the other must

make reasonable exertions to render his injury as light as possible, and he cannot recover from the party breaking the contract damages which would have been avoided had he performed such duty.

5. ———: ———. Therefore, in the case stated, where the owner knew that the furnace was so constructed as to imperil the building and continued to use the furnace without having it repaired in such a manner as to obviate the danger, *held*, that he could not recover from the person constructing the furnace the value of the property destroyed by a resulting fire.

ERROR from the district court of Phelps county. Tried below before GASLIN, J.

*Rhea Bros.*, for plaintiff in error, cited: 2 Rapalje, Law Dictionary, p. 854; *Aultman v. Stout*, 15 Neb., 586; *Sycamore Marsh Harvester Mfg. Co. v. Sturm*, 13 Neb., 210; *Herring v. Skaggs*, 62 Ala., 180; *Sanborn v. Herring*, 6 Am. Law Reg., n. s. [N. Y.], 457; *Walker v. Milner*, 4 F. & F. [Eng.], 745; *Passinger v. Thorburn*, 34 N. Y., 634; *White v. Miller*, 71 N. Y., 118; *Milburn v. Belloni*, 39 N. Y. 53; *Wolcott v. Mount*, 36 N. J. Law, 262; *Flick v. Wetherbee*, 20 Wis., 392; *Barradarle v. Brunton*, 8 Taunt. [Eng.], 535; *Maynard v. Maynard*, 49 Vt., 297; *Brown v. Edgington*, 2 M. & G. [Eng.], 279; *Haysler v. Owen*, 61 Mo., 270; *Smith v. Tunno*, 1 McCord [S. Car.], 443*; *Thurston v. Ludwig*, 6 O. St., 1; *Grimson v. Russell*, 11 Neb., 469.

*McPheely & St. Clair*, contra.

IRVINE, C.

The defendant in error, who was plaintiff in the district court, alleged in his petition that from the 13th of November, 1889, he had been the owner of certain land in the town of Loomis, in Phelps county, and that up to the 25th of March, 1891, he had on said premises a frame hotel building then worth $2,000, and personal property within

said building worth $1,200; that in December, 1889, he entered into a written contract with the defendants in the district court, Grable & Uhlig, whereby the defendants, in consideration of $162, undertook to construct and put into said hotel building a furnace for the purpose of heating said building, and that all work connected with said furnace should be done in a good and workmanlike manner, safe and suitable for the purpose intended ; that the defendants did not construct said furnace in a safe or workmanlike manner, but negligently, and that the cold air boxes were carelessly constructed and placed so as to be dangerously exposed to the heat generated by the furnace, said boxes being constructed of wood, and that by reason of the negligent and unworkmanlike construction of said furnace and cold air box said box took fire, which fire was communicated to the hotel building, whereby it was burned, to plaintiff's damage in the sum of $3,200, for which sum the plaintiff prayed judgment. Grable answered setting up a dissolution between him and Uhlig before the transaction complained of took place, and denying all connection therewith ; whereupon the plaintiff dismissed as to Grable. Uhlig answered by a general denial. There was a trial to a jury, and a verdict and judgment for the plaintiff for $500. . The defendant prosecutes error.

It appears from the record that a single instruction was given by the court at the plaintiff's request. This instruction does not appear in the transcript, but by the clerk's certificate it would seem that the instruction was never returned by the jury, and has not been, since the jury retired, in the custody of the clerk, or with the record. One of the assignments of error is that the court erred in rendering judgment after the loss of the instruction. *Grimson v. Russell*, 11 Neb., 469, is cited in support of that assignment. In *Grimson v. Russell* judgment was entered against the objection of the defendant after all the pleadings were lost and without the record containing substituted pleadings.

Except where judgment is rendered by consent it was said that the record must always disclose at least the petition upon which the judgment is based, and that even in the case of a judgment by consent the judgment or something in the nature of a petition must disclose the cause of action, in order to protect the defendant against further litigation upon the same cause. Attention was called to the defect in the record before the judgment was entered, no substitution was made of copies for the lost pleadings, and the entry of judgment against defendant's objection deprived him of all opportunity to have the case reviewed upon its merits. In this case no objection was made in the motion for a new trial, or otherwise, to the entry of judgment, on account of the loss of the instruction. The defendant seeks to excuse this by saying that the loss was not known to him at that time. But he had the means of knowledge, and was certainly as much bound to know of the loss as either the court or the adverse party. This is a court of review, and the question raised not having been presented to the district court will not be here considered.

The most serious assignment of error relates to the sufficiency of evidence to sustain the verdict rendered. It appears that in November, 1889, a written contract was made, as follows:

### "FURNACE CONTRACT.

"Grable & Uhlig, of Holdrege, Neb., hereby guaranty to put into the new hotel in Loomis, Neb., now under erection and owned by E. Barnum, of Loomis, Neb., one No. 140 Crusader portable furnace for the net sum of one hundred and sixty-two dollars ($162). Said furnace to be put in with four hot air registers down-stairs and one hot air register upstairs in the hall. Said furnace and registers to be put in complete, with all necessary pipes and connections, and completed ready for fire. Grable & Uhlig guaranty said furnace to heat said hotel to 70° F. in winter weather. And all work to be done in a workmanlike man-

ner.  Terms as follows: $65 June 1, 1890, and $97 November 1, 1890.  These payments to be settled by note, drawing ten per cent interest, and to be given when building is enclosed.          GRABLE & UHLIG,

"Per G. W. JOHNSON, *Their Agt.*

"EDWIN BARNUM."

On the trial no question was made as to Johnson's authority or as to the fact that while the contract was made in the name of Grable & Uhlig it was in fact made on behalf of Uhlig alone.  The furnace was put in under the supervision of Johnson.  Barnum, who was a brick-mason, made the excavation and laid the foundation, but he acted under Johnson's direction.  Men employed by Barnum about the construction of the hotel built the cold air boxes, but in so doing they too acted entirely under the direction of Johnson.  A cold air box was constructed from the outer wall about on a level with the top of the furnace to a point near the furnace where an elbow was placed and the box continued downwards parallel with the furnace to its base.  The upright portion of the box was within a very few inches of the furnace.  Barnum complained that this construction might be dangerous, whereupon Johnson said that he would put asbestos paper over the box and that it would then be safe.  The exposed portion of the box was covered with asbestos paper and some tin was used. The furnace was completed in February, 1890, and used to a certain extent that spring.  It was also used during the winter of 1890 and 1891.  During this time complaints were made to Uhlig that it did not properly heat the building.  On March 13, 1891, the cold air box referred to was discovered to be on fire inside.  It was broken open, the fire extinguished, the boards partly replaced and some galvanized iron also used ; in what manner does not appear.  Barnum continued to use the furnace, but immediately wrote Uhlig, and Uhlig came to Loomis and another contract was entered into as follows:

"LOOMIS, NEB., March 20th, 1891.

"It is hereby agreed to move and change the furnace of the Monitor hotel, and furnish all the necessary labor and materials which are necessary and needed to move said furnace further north, and furnish additional cold air boxes, so as to make same work in a satisfactory manner during winter weather; all this to be done free of expense to E. Barnum, with exceptions of hotel bill while here.

"E. Barnum agrees to do all the needed excavating without expense to Max Uhlig, and agrees to take up his two notes of $97 and $130 at maturity.

"Max Uhlig agrees to do the work aforesaid, any time during the summer of 1891, whenever Mr. Barnum informs him that the excavating has been done.

"MAX UHLIG.
"E. BARNUM."

On the morning of March 25th Barnum arose about 6 o'clock, went to the cellar, found a low fire in the furnace, shook out the ashes, put on coal and returned upstairs. A snow storm was then prevailing accompanied by a strong northeast wind. In about an hour smoke was discovered coming through a register. Barnum attempted to go down cellar, but found it so filled with smoke that it was impossible to enter. From the stairs, however, he could see a blaze at the base of the cold air box. The house with a portion of its contents was destroyed.

The plaintiff in error contends that in order to make out a cause of action it was necessary for Barnum to prove that the furnace was not constructed in a skillful and workmanlike manner; that the fire broke out and was communicated by reason of such improper construction and resulted from some latent defect in the apparatus itself and not to improper use thereof by Barnum. There can be no doubt of the general application of these propositions, but we think the evidence was such as to justify the jury in finding that such conditions existed. It is true that all the

expert testimony was to the effect that the mode of con-
struction adopted was proper.   But on the other hand it
must strike any person of ordinary observation that the
placing of wooden boxes within a few inches of a furnace
intended to be kept hot is a hazardous proceeding.   Whether
the use of asbestos paper was a sufficient safeguard against
communication of fire was debatable and a proper question
for the jury.   The evidence showed that this material
would be destroyed by long exposure to intense heat; that
when heat was applied to it to a sufficient degree it became
incandescent.   A witness for the defendant testified that if
he had in his possession a piece of asbestos paper he could
heat it to incandescence in the presence of the jury by ap-
plying a match.   There was no safeguard adopted to pre-
vent fire on the inside of the box.   We do not think the
jury was bound by the opinions of expert witnesses that
the mode of construction adopted was usual and proper, as
against their own judgment upon proof of the actual man-
ner of construction, and the fact that fires occurred not once
but twice in this particular cold air box.

As to the second proposition, we think it appears beyond
question that the conflagration did originate at or near the
base of this cold air box.   The theory of the plaintiff was
that the asbestos paper became overheated from radiation
from the furnace and communicated to the wood.   The
theory of the defendant was that the other cold air box
had been left open and the strong northeast wind blew the
air into that in such a way as to force the hot air back into
the box which ignited.   But if the latter theory be ac-
cepted, we still think the jury was justified in finding that
the mode of construction was dangerous and that the fire
occurred because of the manner of construction.

As to the last part of this proposition, to-wit, that it
should be made to appear that the fire resulted from some
latent defect in the apparatus itself, and not to improper
use by Barnum, we think as a matter of law there should

be a qualification in its statement.   We regard the contract
to construct the furnace in a workmanlike manner as re-
quiring, so far as the element of safety is concerned, not
that it should be safe however used, but that it should be
so constructed as not to expose the building to danger from
fire when the furnace was used by a person of ordinary
prudence in the usual manner.   There is some evidence
tending to show that with the wind in the quarter in which
it was on the morning of the fire, the openings into the
cold air box, their valves, so to speak, were so arranged as
to cause the air to take a reverse direction and after being
heated to enter the box which took fire, and that a different
arrangement of these valves would have obviated the
danger.   But there is also evidence that Barnum had ar-
ranged the valves in substantial accordance with instruc-
tions given by Johnson, and that Johnson had once for
Barnum's benefit arranged these valves in the same manner
when the wind was in the same quarter.   It certainly can-
not be said that Barnum did not act as a person of ordinary
prudence in the management of the furnace if he managed
it according to the directions of the persons who sold and
constructed the furnace for him and instructed him in its
use.   We think, therefore, that the jury was justified in
finding that whether the fire originated from radiation from
the outside or by hot air inside the air box, the air box had
not been constructed in a workmanlike manner and that
the fire originated because of such defect in construction
and not from an improper and careless use of the furnace,
so far as the manner of use was concerned.   It is hardly
contended that the agreement to construct the furnace in a
workmanlike manner did not require a reasonably safe con-
struction as against the danger from fire.   We certainly
have no doubt on that point.

It is argued that the contract of March 20, hereinbefore
set out, operated to terminate all obligations under the
former contract, superseded the same, and became the final

and complete expression of the obligations of the parties.
But the evidence was that this contract was made because
of Barnum's complaining that the furnace did not properly
heat the building; and it is evident, from a consideration of
the circumstances and from inspection of the contracts, that
that of March 20th was intended not to supersede the for-
mer contract, which had been largely executed, but that it
was supplementary thereto, and, except as expressly stated,
was not intended to alter the terms of the old contract. So
far as the direction of the verdict is concerned, we think it
was sustained by the evidence.

The defendant contends that the damages alleged and
recovered were too remote. The general rule in such cases
has been, perhaps, best stated by Baron Alderson in *Hadley
v. Baxendale,* 9 Exch. [Eng.], 341. The familiar lan-
guage of that case is as follows: "Where two parties have
made a contract which one of them has broken, the dam-
ages which the other party ought to receive in respect of
such breach of contract should be such as may fairly
and reasonably be considered either arising naturally, *i. e.,*
according to the usual course of things, from such breach
of contract itself, or such as may reasonably be supposed
to have been in the contemplation of both parties, at the
time they made the contract, as the probable result of the
breach of it." The principle of this case has been ap-
proved several times in this state. (*Sycamore Marsh Har-
vester Mfg. Co. v. Sturm,* 13 Neb., 210; *Aultman v. Stout,*
15 Neb., 586; *Deering v. Miller,* 33 Neb., 654; *Omaha
Coal, Coke & Lime Co. v. Fay,* 37 Neb., 68.) Certainly a
natural and probable consequence of constructing a hot air
furnace in an unworkmanlike manner, where the defective
construction consists in placing wood without proper pro-
tection in such a position as to become greatly heated, is
the destruction by fire of the building in which the fur-
nace is placed, and on this bare state of the case we would
have no doubt that the jury was justified in finding that

the damage complained of arose naturally from the breach of contract and that it was in the contemplation of both parties as a probable result of the breach. But an element comes into this case which rendered the broad application of the rule impossible. It will be remembered that two weeks before the fire destroying the building this cold air box had taken fire about at the point and very probably in the same manner as on the second occasion. Barnum knew of this fire, and in fact he himself extinguished it. He knew, therefore, that the furnace as then constructed was a source of danger. He made no repairs for the purpose of obviating the danger and continued to use the furnace practically in the condition in which the first fire left it.

In *Haysler v. Owen*, 61 Mo., 270, suit was brought for a portion of the price of a roof upon a livery stable. The defendant pleaded that the roof was constructed in an unskillful and unworkmanlike manner, in consequence whereof it leaked and defendant's hay was wet and his wall damaged. The court said: "If the defendant had no knowledge of any defect in the roof at the time of the rains and the consequent injury, he would undoubtedly be entitled to recover to the extent of that damage; but if he did know that the roof was defective and not impervious to water, and he failed to protect himself when he might have done so at a trifling expense or by any reasonable exertions, he can recover nothing for the damages suffered in consequence of such failure."

In *Oliver v. Hawley*, 5 Neb., 439, defendant received from plaintiff certain flaxseed. The seed was not as contracted for, but contained a large proportion of mustard seed. The defendant discovered this fact before sowing, but nevertheless sowed the seed, and when the crop came up largely mustard, sought to recover from the plaintiff as damages the injury to his land on account of the foul seed and the damage to his crop thereby. The court said: "But I think no case can be found in which consequential dam-

42

ages have been recovered where a party, as in this case, had knowledge of the inferior character of the seed before sowing the same. In such case the party furnishing the seed is not liable for damages resulting to either crop or the land in consequence of the use of such inferior seed."

In *Long v. Clapp*, 15 Neb., 417, the action was for breach of warranty in the sale of sheep which, contrary to the warranty, were diseased. It was there held that in such case the party injured must make reasonable exertions to render the injury as light as possible, and the opinion gives this as the reason for permitting him to recover the expense of performing such duty. The following language from Sutherland on Damages is there quoted with approval: "The law imposes upon a party injured from another's breach of contract or tort the active duty of making reasonable exertions to render the injury as light as possible. If, by his negligence or willfulness, he allows the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him. This is a practical duty under a great variety of circumstances, and as the damages which are suffered by a failure to perform it are not recoverable, it is a duty of great importance. Where it exists, the labor or expense which its performance involves is chargeable to the party liable for the injury thus mitigated; in other words, the reasonable cost of the measures which the injured party is bound to take to lessen the damages, whether adopted or not, will measure the compensation the party injured can recover for the injury, or the part of the injury, that such measures had or would have prevented."

In *Omaha Coal, Coke & Lime Co. v. Fay, supra,* where it was claimed that the lime sold for plastering a building was unfit for the purpose, it was held that the cost of re-plastering the building could not be recovered unless it was shown that the defect in the lime could not, by a person

Uhlig v. Barnum.

accustomed to use such materials, be discovered before it was used in the building.

In *Loomer v. Thomas*, 38 Neb., 277, it was held that if the party injured by another's breach of contract by negligence or willfulness allow his damages to be unnecessarily enhanced the consequent loss which was avoidable by the performance of his duty, fall upon him.

Indeed, the foregoing citation of authorities may be unnecessary. The rule stated is applied every day in the case of sales of articles purchasable upon the market. It is because of this rule that in such a case the damages for breach of contract to deliver are confined generally to the difference between the contract price and the market price. Because of the vendor's failure to deliver, the vendee must not, if the article is readily purchasable upon the market, go without it and suffer the consequential damages; on the contrary, he must purchase the article upon the market and so avoid such consequences. In this case it was, therefore, the duty of Barnum, when he was apprised by the first fire of the existing danger, to cause the furnace to be repaired in such a manner as to obviate the danger. Because this was his duty he could have recovered from Uhlig the expense involved. If the repairs involved the temporary closing of the hotel he would probably have been entitled to have that fact considered in estimating his damages; but when with a knowledge of the danger he continued to use the furnace without repairs, or without the repairs necessary to obviate the danger, he took the risk of fire and Uhlig is not responsible for the damages caused thereby. The only foundation in the evidence for substantial damages is the destruction of the building and its contents, but we have held that there was sufficient evidence to establish a breach of contract and the plaintiff was therefore entitled to nominal damages against the defendant. (*Mollyneaux v. Wittenberg*, 39 Neb., 547.) The judgment will, therefore, be reversed unless, within twenty days, the defendant in

error file in this court a remittitur of all the judgment except five cents, in which case the judgment will be affirmed for that amount.

JUDGMENT ACCORDINGLY.