No. 37,761

In re Estate of John O. Greenleaf, Deceased. (LOIS GREENLEAF CHRISTENSON, *Appellee,* v. MYRTLE GREENLEAF, Executrix of Estate of John O. Greenleaf, Deceased, *Appellant.*)

(217 P. 2d 275)

Opinion filed April 8, 1950.

*John H. Morse,* of Mound City, was on the briefs for the appellant.
*Harry C. Blaker,* of Pleasanton, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This action began in the probate court where Lois Greenleaf Christenson, hereinafter called plaintiff, filed her petition for demand against the estate of her father, John O. Greenleaf, to have it adjudged that she was entitled to all of the real property owned by decedent at the time of his death. The claim was founded

upon a written instrument made and entered into on or about February 12, 1945, prior to the marriage of the decedent, John O. Greenleaf, and his widow, Myrtle Greenleaf, hereinafter called defendant, between John O. Greenleaf, Lois Christenson, the petitioner, and Myrtle Greenleaf, then Myrtle Spegal, relative to the property of John O. Greenleaf, and providing for its disposition and the settling of the rights of the other parties with respect thereto. The written instrument relied upon, attached as Ex. "A," reads:

"Feb. 12-1945

"This is an Agreement made between
    John O Greenleaf
    Lois Christenson Daughter
    Myrtle Spegal
In case that I pass away first. House and Land goes to Lois. Deed was made out for same in July 1944.
    "To Myrtle all Livestock on hand at that time. Furniture. Household goods. Shop tools and car if I have one. Any Money on hand At that time is to be equally divided between Lois and Myrtle. After my last expenses are paid.
I want Connie to have the Piana
as long as I live all Property and Holdings are to remain mine to handle as I see fit
    "I know there are some personal belonging's of Mother's that Lois shall have Will'let you both decide on that. Have already given the Poney Betsey to Connie.

John O. Greenleaf
Lois Christenson
Myrtle Spegal."

Upon plaintiff's request the case was transferred to the district court for trial. There the court heard the evidence, found generally for plaintiff and rendered judgment in her favor and filed written findings of fact and conclusions of law. Defendant has appealed.

In the district court defendant filed a motion that plaintiff be required to make her petition more definite and certain by alleging the specific character of the instrument relied upon by plaintiff and what consideration, if any, had passed between the respective parties, and more particularly describing and setting out the deed made in July, 1944, referred to in the alleged agreement. This motion was overruled. Defendant filed a demurrer to the petition, which was overruled, and later filed an answer in which defendant specifically denied that decedent and defendant entered into any agreement relative to the property of the decedent on or about February 12, 1945, and specifically denied that the instrument relied upon by

plaintiff was signed by her prior to the marriage of decedent and defendant. The answer admitted that on or about February 15, 1945, decedent and defendant signed an instrument similar to that relied upon by plaintiff, but alleged that defendant does not know and is unable to allege the wording or substance thereof, or whether the instrument was the same as that relied upon by plaintiff; alleged there was no consideration for the alleged agreement or for the execution of the same as between decedent and defendant, or between decedent and plaintiff, or as between plaintiff and defendant, by reason of which there was no valid contract; that if, in fact, the instrument was executed by decedent it was an ineffective attempt by him to make a testamentary disposition of a portion of his property and was void for the reason that it was not executed and attested in accordance with our statute (G. S. 1947 Supp. 59-606) governing the execution of wills, and that if the instrument relied upon by plaintiff had any valid or binding effect as a contract or will, or otherwise, which defendant denies, the same was revoked, canceled and rescinded by mutual agreement of decedent and defendant made and entered into by them orally on or about July 8, 1947, whereby decedent agreed to make a will devising to defendant a part of the real property and all his personal property for her lifetime, with power of disposal, and devising to plaintiff 10.58 acres of land in Linn county; that defendant agreed to accept and consented to the terms of such will and both parties agreed that their agreement and the will to be executed pursuant thereto should supersede and revoke any former provisions made or attempted to be made by decedent of the disposition of any of his property; that pursuant to this agreement decedent, on July 9, 1947, duly made, executed and published and declared his last will and testament in writing, and that defendant on the same date did consent in writing to the will; that the will was duly admitted to probate as the last will and testament of the decedent by order of the probate court of Linn county, dated November 14, 1947, and that there is now pending in the above matter in the probate court of Linn county a petition by defendant, as surviving spouse of the decedent, requesting the court to set apart to her certain realty of the decedent as a homestead and certain personal property as her statutory allowance; that if plaintiff has any rights under the agreement alleged in her petition they are subject to the rights of the widow in and to the homestead and statutory allowances, and any judgment or order purporting to determine the rights of the parties pursuant to the alleged agreement should be made subject to the

determination and setting apart of such homestead and statutory allowances.

Plaintiff replied to the answer with a general denial and a demurrer to certain paragraphs of the answer as not stating any defenses.

After hearing the evidence the court made findings of fact and conclusions of law, the pertinent portions of which are as follows:

### "FINDINGS OF FACT.

"1. John O. Greenleaf died in Mound City, Kansas, on the ............ day of ........................., 194........, at the age of ............ years. He left surviving him his wife, Myrtle Spegal Greenleaf, and a daughter, Lois Greenleaf Christenson, who was adopted when a small child by John O. Greenleaf and his first wife. After the death of his first wife, he employed Myrtle Spegal to keep house for him and she came to the home and lived in the house and acted as housekeeper for John for some years.

"2. On February 12, 1945, John O. Greenleaf and Myrtle Spegal and the daughter, Lois Greenleaf Christianson, signed a paper denominated an agreement, written in the handwriting of John O. Greenleaf, a copy of which is attached to the petitioner's petition, the original of which was introduced in evidence. The writing was in two or three copies and one copy was handed to the daughter, Lois, in an envelope endorsed in the hand of John O. Greenleaf 'agreement between John O. Greenleaf, Lois and Myrtle'. This is the copy that was introduced in evidence.

"3. The only property owned by John O. Greenleaf was a small tract of land upon which he made his home, a few head of livestock, furniture and household goods, shop tools and some money. . . .

"4. On February 16, 1945, John O. Greenleaf and Myrtle Spegal were married and continued to live in and occupy the residence, living together as husband and wife until his death.

"5. About May, 1946, John Greenleaf suffered a slight stroke and had some resulting paralysis and difficulty with his mind, from which he probably never entirely recovered.

"6. In July, 1947, John O. Greenleaf made and executed a will which was consented to by Myrtle Greenleaf, his wife, by which substantially all his property was devised to his wife. The terms of this will were in contravention of the terms of the agreement. The daughter was not consulted and gave no consent to the will or any revocation of the contract.

### "CONCLUSIONS OF LAW.

"1. The agreement in controversy is an antenuptial agreement.

"2. Lois Greenleaf Christianson being a daughter of John O. Greenleaf and being specifically a party to the contract, was within the consideration of marriage which made the agreement binding.

"3. She being a party to the contract and within the consideration, the agreement could not be revoked without her consent. . . ."

Defendant in due time filed a motion for a new trial upon most of the statutory grounds and also filed a motion to correct, modify and vacate the findings and conclusions made by the court. These motions were heard by the court and denied. The court rendered judgment in which it found generally for the plaintiff, allowed her petition, and decreed she had right and title to all the real estate belonging to John O. Greenleaf at the time of his death.

Defendant has appealed and contends the court erred in the admission of evidence. On this point appellant contends the court erred in permitting plaintiff, as a witness, to testify to transactions or communications had with her father, since deceased, in violation of G. S. 1935, 60-2804. We have read this evidence carefully and find the court was exceedingly careful in its ruling to see that this statute was not violated. In fact, few of the questions were framed in such a way as to permit the witness to violate it. However, some of the answers did tend to do so and each of such answers was stricken out on motion of defendant.

Appellant next contends that the court excluded competent, material evidence offered by defendant, and on the hearing of the motion for a new trial presented an affidavit of defendant as to what she would have testified to if objections to her testimony had not been sustained. We have checked this affidavit with her testimony and find that practically all included in the affidavit was testified to by her. Questions were asked her about the conversations she had with Mr. Greenleaf shortly before she signed Ex. "A." Objections to them were sustained upon the well-known ground that such testimony is not competent to vary the terms of an agreement. We think that ruling was proper in view of the fact that defendant had not pleaded fraud or anything akin to it of any one part with respect to the execution of the instrument. We think this point is not well taken.

Appellant argues that the findings of fact and conclusions of law are contrary to the evidence. Plaintiff and defendant were the principal witnesses. It is true there is some conflict in their testimony. In deciding the case the court was required to resolve that conflict. He did so more in keeping with that of plaintiff than with that of defendant, and with the trial court's action in that matter this court is not concerned. It is clear the evidence of each of them was that the instrument was written by John O. Greenleaf, that it was signed by each of the parties whose names appear thereon,

and that it was executed either the day before, or a few days before, the marriage of Mr. Greenleaf and Myrtle Spegal.

The principal legal questions presented here pertain to the nature of the instrument relied upon by plaintiff, Ex. "A," whether there was consideration for it, and whether defendant and John O. Greenleaf could revoke it, as appellant claims they did, or attempted to do, by their oral agreement made in July, 1947, under which he would make a will disposing of the property differently and more favorably to defendant than provided for her in Ex. "A" without plaintiff's knowledge and consent.

The trial court concluded Ex. "A" was an antenuptial agreement. It was executed shortly before and in contemplation of the marriage of plaintiff's father and defendant. Frequently there are only two parties to an antenuptial agreement—the man and the woman who contemplate marriage. But the fact other interested parties join in the agreement does not prevent it from being an antenuptial agreement. (See 26 Am. Jur. pp. 896, 897, and cases there cited.)

Appellant stresses the fact that the instrument contains some language appropriate to a will, or normally found only in a testamentary instrument. The fact that it did so does not change it from an antenuptial agreement to a will. Indeed, some language of that character may be found in many antenuptial agreements, and when so found the court will still treat the instrument as an antenuptial agreement if other facts and circumstances make it clear it should be so treated. (See 26 Am. Jur. p. 900.) It is not unusual for one whose first wife has died and who has a child or children by the first wife, when he contemplates a second marriage, either to dispose of some of his property to the children of the first wife, or to make some provision for them in an antenuptial agreement or other instrument. The testimony disclosed that John O. Greenleaf was a man who thought out the problems of his business, and when he concluded what should be done was very firm in his convictions. He no doubt knew that if he died intestate, without marrying again, his daughter would inherit all of his property, but if he did marry and leave surviving him his widow and his daughter that his daughter would get only half of it, and that they might have different views as to how it should be divided. So he wrote a statement in his own language and his own handwriting as to how the property should be divided "In case that I pass away first," and provided that in such a case the daughter should have his real property and his widow

should have his personal property. The instrument in that regard is not difficult to understand. There is no contention now by either the plaintiff or the defendant that she did not understand it.

As to consideration for the agreement it may be said the fact that it was in writing imported consideration (G. S. 1935, 16-107). Since it was an antenuptial agreement in contemplation of marriage, which marriage was consummated within a few days, the marriage itself completed any lack of consideration in the instrument. In addition to that, each of the parties thereto had either an actual or a prospective financial interest in the subject matter of the agreement.

It was appropriate that all of them should sign it, and they did. It was appropriate to have copies of it made and one given to each of the parties, and that was done. The testimony discloses there was no ill feeling between plaintiff and defendant. The plaintiff visited her father's home before the marriage, thought they were getting along very well, and that it was possible they might marry. She visited in the home perhaps every two months after the marriage. Plaintiff knew nothing of the will of July, 1947, nor of any effort of her father or of defendant to revoke the agreement, Ex. "A," until after the death of her father.

Antenuptial agreements may be revoked with the consent of all the parties to it. (See 26 Am. Jur. 902, 41 C. J. S. 583, and cases there cited.) But where there is an antenuptial agreement, executed by three or more parties, we have found no authority which would authorize two of them to revoke it without the knowledge or consent of the other and to his or her disadvantage. Indeed, such authority as we find is to the contrary. (See authorities last cited.) Even agreements made between members of the family, for the benefit of some one of them who did not sign the agreement, cannot be revoked by the parties executing the agreement without the knowledge and consent of the party for whose benefit it was made. (See *Hagerman v. Hagerman,* 160 Kan. 742, 165 P. 2d 431; *French v. French,* 161 Kan. 327, 167 P. 2d 305.)

We find no error in the record. The judgment of the trial court is affirmed.