WILLIE E. TURNER AND GEORGE L. TURNER, INDIVIDUALLY AND AS AD-
MINISTRATORS OF THE ESTATE OF E. F. TURNER, PETITIONERS, v. HOBSON
D. TURNER, E. ROYALL TURNER, ODETTE T. WEBB, OLIA T.
SPRUILL, BESSIE T. HYATT AND CHARLIE P. TURNER; AND RUTH
U. TURNER, ADDITIONAL DEFENDANT, DEFENDANTS.

(Filed 21 September, 1955.)

**1. Husband and Wife § 1: Dower § 5—**

Dower rights may be released by a valid antenuptial contract which so
provides in plain and unequivocal language. G.S. 52-13.

**2. Husband and Wife § 3—**

Where both parties are competent to contract, and each owns realty and
has knowledge of the realty owned by the other, an antenuptial contract
in which each releases to the other any estate in the realty of the other
predicated upon marriage, which contract is acknowledged before the clerk,
who incorporates in the certificate a finding that the agreement is not inju-
rious to the *feme*, is valid, the mutuality of the stipulations being a suffi-
cient consideration.

**3. Husband and Wife § 1—**

Antenuptial agreements are not against public policy.

**4. Husband and Wife § 12d (4)—**

A deed of separation is annulled by the subsequent resumption of con-
jugal cohabitation by the parties.

**5. Husband and Wife § 3—**

In the absence of contractual or statutory provisions to the contrary, an
antenuptial agreement is not affected by a later separation and subsequent
reconciliation of the parties.

**6. Husband and Wife § 3—**

Antenuptial contracts may be modified or rescinded during coverture with the full and free consent of the parties thereto, provided the rights of third parties have not intervened.

**7. Contracts § 13—**

Whether a new contract between the same parties discharges or supersedes a prior agreement between them depends upon their intention as ascertained from the instrument, the relation of the parties and the surrounding circumstances.

**8. Same—**

A new contract does not discharge a prior contract between the parties unless it deals with the subject matter of the former contract so comprehensively as to be complete within itself and raise the legal inference of substitution, and a new contract which is consistent with or supplementary to the prior agreement does not rescind the prior contract.

**9. Same—**

The parties may rescind or modify an agreement between themselves by a new contract unless the rights of third persons have intervened.

**10. Husband and Wife § 2—**

The principles of construction applicable to antenuptial contracts and to contracts generally are the same.

**11. Same: Husband and Wife § 12d (2)—**

Where the terms of an antenuptial agreement and a deed of separation are plain and explicit, the court will determine their legal effect.

**12. Husband and Wife §§ 3, 12d (3): Dower § 5—Antenuptial agreement held not rescinded by subsequent deed of separation.**

The parties executed an antenuptial agreement under which each released to the other any estate in the realty of the other predicated upon marriage. Subsequent to the marriage the parties executed a deed of separation which provided that the real and personal property owned by each respectively or thereafter acquired by either, should be and remain the sole and separate property of each, and that each would execute all deeds and papers as might be necessary to enable the other to sell or dispose of their respective properties. The deed of separation was rescinded by the subsequent resumption of conjugal cohabitation. *Held:* The deed of separation was supplementary to and not inconsistent with the antenuptial agreement, and did not rescind or discharge the antenuptial agreement, and therefore upon the later death of the husband, the antenuptial agreement precludes the wife's right of dower in his lands.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.

APPEAL by the defendant Ruth U. Turner from *Morris, Resident Judge,* in Chambers. GATES.

This appeal is concerned solely with the alleged right of dower of Ruth U. Turner in the real property of which her deceased husband,

E. F. Turner, was beneficially seised during the marriage. A jury trial was waived, and the question was submitted to the court upon an agreed statement of facts.

The administrators of E. F. Turner, who died intestate on 1 March 1954, pursuant to G.S. 28-81 *et seq.*, commenced a proceeding to sell real property of their intestate for the payment of his debts. In this proceeding his widow Ruth U. Turner filed answer asserting her claim for dower.

On 20 January 1939 E. F. Turner and Ruth Umphlett, in contemplation of a marriage between them the next day, entered into a written antenuptial agreement. At the time this agreement was executed by them Ruth Umphlett owned real and personal property of the approximate value of $2,500.00 and E. F. Turner owned real and personal property of the value of about $17,500.00, of which property part was realty subject to a deed of trust securing his note in the sum of $2,000.00. All of this realty E. F. Turner owned at the time of his death, and this is the realty in which his widow claims dower. Before and at the time of the execution of this agreement Ruth Umphlett had full knowledge of E. F. Turner's financial status.

The antenuptial agreement states that it shall not apply to the personal property of which either party may die possessed, and that the survivor shall be entitled to that part of the personal property of the one who dies first, as provided by the Statute of Distribution of an intestate's estate.

The antenuptial agreement states at its beginning that whereas a marriage is soon to be solemnized between Ruth Umphlett and E. F. Turner, each of them has consented and agreed with the other that neither shall have or acquire any estate or interest in the real property of which the other is, or shall be seised at the time of marriage, or may thereafter acquire; that E. F. Turner shall have no right, interest or claim in the estate of Ruth Umphlett as tenant by curtesy or by virtue of any statute relating to the descent of real estate; and that Ruth Umphlett shall have no right of dower or homestead in any real estate of which E. F. Turner is or shall be seised or possessed. Ruth Umphlett in consideration of E. F. Turner releasing all right and claims which he might have in the realty which she now owns, or may hereafter acquire, and in further consideration of one dollar paid to her by him, acquitted, released and discharged all the real estate which E. F. Turner now owns or may hereafter acquire, of all claims of dower, homestead or as an heir at law, to which she might be entitled by force of any statute, custom or otherwise, so that in the event she shall survive E. F. Turner, his real property may go, and be disposed of in every respect as if he had remained unmarried. For a similar consideration E. F. Turner released

all rights and claims which he might have in Ruth Umphlett's real property now owned, or hereafter acquired, and agreed that she should have entire and free disposition of all her realty by will as if she were unmarried, and that he should have no right, claim or interest whatever in it.

E. F. Turner and Ruth Umphlett on the day they signed this agreement acknowledged their due execution of it before the Clerk of the Superior Court of Gates County; and the parties being separately examined by the Clerk, and it appearing to him that they executed the agreement freely and voluntarily, and that it was not unreasonable or injurious to either party, he ordered it registered. The same day it was filed for registration, and is recorded in Book 84, p. 115, in the public registry office of Gates County.

On 21 January 1939 E. F. Turner and Ruth Umphlett were married. They lived together until 22 December 1939, when they separated, and entered into a written separation agreement, which is of record in Book 85, p. 44, in the public registry office of Gates County. This agreement provides that they shall live apart; that the wife shall be free from any control of her husband as if she were unmarried; that the real and personal property now owned by each respectively, or by either hereafter acquired, shall be and remain the sole and separate property of each free from all rights of the other, with full power of each to convey, assign or deal with the property belonging to each as if each one were unmarried; that each will from time to time execute all such deeds and papers as may be necessary to enable each to sell, assign or deal with the respective property of each; that the wife shall incur no debts for which the husband would be liable. This deed of separation was duly proved as required by G.S. 52-12 and the examining officer incorporated in his certificate a statement of his conclusions and findings of fact that the deed of separation was not unreasonable or injurious to her.

In November 1940 Ruth U. Turner and E. F. Turner, by mutual consent, resumed their marital status, and from then until his death lived together as man and wife.

The judge made these conclusions of law:

One. The deed of separation did not operate as an abandonment of, or substitution for, the antenuptial agreement.

Two. The antenuptial agreement was in full force and effect at the time of E. F. Turner's death.

Three. The deed of separation became inoperative and of no force and effect, when the parties became reconciled, and lived together as man and wife until the husband's death.

Four. The antenuptial agreement precluded Ruth U. Turner from dower in the lands of which her husband died seised and possessed.

The judge entered judgment that Ruth U. Turner had no dower in the lands of which E. F. Turner died seised and possessed, and that the lands could be sold free and clear of any claim of dower of his widow.

From the judgment entered the defendant Ruth U. Turner appeals, assigning error.

*T. W. Costen and Worth & Horner for Plaintiff, Appellees.*
*John H. Hall for Ruth U. Turner, Defendant, Appellant.*

PARKER, J. The defendant Ruth U. Turner contends that the deed of separation operated as a substitution for, or a rescission of, the antenuptial agreement, that the resumption of conjugal cohabitation by E. F. Turner and herself annulled the deed of separation, and therefore she is entitled to dower.

Ruth Umphlett, in contemplation of marriage, with E. F. Turner was expressly authorized by G.S. 52-13 to release by valid contract her right of dower in the lands of E. F. Turner. *Stewart v. Stewart,* 222 N.C. 387, 23 S.E. 2d 306; *Blankenship v. Blankenship,* 234 N.C. 162, 66 S.E. 2d 680. This statute states "such releases may be pleaded in bar of any action or proceeding for the recovery of the rights and estates so released."

In this antenuptial agreement Ruth Umphlett in plain and unequivocal language acquitted, released and discharged all lands and real estate of which E. F. Turner is possessed, or shall be entitled to at his decease, from all claims of dower and homestead, so that his realty, in the event she survived him, should go in every respect as if E. F. Turner had continued unmarried. The mutuality of the stipulations in this agreement whereby E. F. Turner, the prospective husband, and Ruth Umphlett, the prospective wife, mutually released rights in each other's property is a sufficient consideration. *Blankenship v. Blankenship, supra; Smith v. Farrington* (Maine), 29 A. 2d 163. At the time of the execution of the agreement Ruth Umphlett had full knowledge of E. F. Turner's financial status. She owned property at the time, and so did he. She entered into the agreement freely and voluntarily: there is no suggestion of any fraud or imposition in procuring her to execute it. The parties were legally competent to contract. The Clerk of the Superior Court of Gates County, before whom the parties acknowledged the due execution of the antenuptial agreement, incorporated in his certificate that the agreement was not unreasonable or injurious to Ruth Umphlett.

There is no contention that the antenuptial agreement was unjust or unreasonable, or that it was improperly executed.

Antenuptial agreements are not against public policy, and if freely and intelligently and justly made, are considered in many circumstances as conducive to marital tranquility and the avoidance of unseemly disputes concerning property. *Seuss v. Schukat,* 358 Ill. 27, 192 N.E. 668, 95 A.L.R. 1461.

The antenuptial agreement here is a valid contract, and in equity should be enforced as written, *Stewart v. Stewart, supra,* unless the deed of separation operated as a substitution for, or a rescission of, the antenuptial agreement. The deed of separation was annulled by the subsequent resumption of conjugal cohabitation by Ruth U. Turner and E. F. Turner. *Campbell v. Campbell,* 234 N.C. 188, 66 S.E. 2d 672; *S. v. Gossett,* 203 N.C. 641, 166 S.E. 754.

It seems that in the absence of contrary provisions in an antenuptial agreement, or of special statutory provisions, a separation and reconciliation between husband and wife will not affect or extinguish property rights under such an agreement. *Cryar v. Cryar,* 243 Ala. 318, 10 So. 2d 11; *Suess v. Schukat, supra;* 41 C.J.S., Husband and Wife, Sec. 310. The antenuptial agreement here contains no contrary provisions, and we have no statutory provisions applicable to such facts.

We said in *Taylor v. Taylor,* 197 N.C. 197, 148 S.E. 171, that, on grounds of public policy, deeds of separation between husband and wife are not favored by the law. There is this prime difference between a deed of separation and an antenuptial agreement: the former provides for a husband and wife living separate and apart, the latter contemplates a marriage and a living together.

Antenuptial contracts may during coverture be modified or rescinded with the full and free consent of the parties thereto, provided the rights of third parties have not intervened. *In re Greenleaf's Estate,* 169 Kan. 22, 217 P. 2d 275, 280; *O'Dell v. O'Dell,* 238 Iowa 434, 26 N.W. 2d 401; 41 C.J.S., Husband and Wife, Sections 93 and 109; 26 Am. Jur., Husband and Wife, Sections 302 and 317.

It is well settled law that the parties to a contract, no rights of third parties having intervened, may rescind it, or substitute another contract for it, by making a new contract inconsistent therewith. *Redding v. Vogt,* 140 N.C. 562, 53 S.E. 337, 6 Anno. Cas. 312. The making of a second contract dealing with the same subject matter does not, however, necessarily abrogate the former contract. *Bank v. Supply Co.,* 226 N.C. 416, 38 S.E. 2d 503.

A new contract between the same parties which contains nothing inconsistent with the older one does not discharge the latter. *Drown v. Forrest,* 63 Vt. 557, 22 A. 612, 14 L.R.A. 80; 12 Am. Jur., Contracts, Sec. 433; 17 C.J.S., Contracts, p. 885.

A new contract consistent with, or supplementary to, a prior contract does not discharge the prior contract. *Orpheus Vaudeville Co. v. Clayton Inv. Co.*, 41 Utah 605, 128 P. 575; *Uhlig v. Barnum*, 43 Neb. 584, 61 N.W. 749; Note to 6 Anno. Cases, p. 316; 17 C.J.S., Contracts, Sec. 394.

We said in *Bank v. Supply Co., supra:* "To have the effect of rescission, it" (the second contract) "must either deal with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution (citing authorities), or it must present such inconsistencies with the first contract that the two cannot in any substantial respect stand together. . . . Before the new contract can be accepted as discharging the old, the fact that such was the intention of the parties must clearly appear. . . . We must, of course, keep within the bounds of the writings, but the circumstances surrounding their execution, the relation of the parties and the object to be accomplished, are all to be consulted in arriving at the intent."

Whether a prior contract is discharged by a new contract depends on the intention of the parties. 17 C.J.S., Contracts, p. 885.

The principles of construction applicable to antenuptial contracts and to contracts generally are the same. *Collins v. Phillips*, 259 Ill. 405, 102 N.E. 796, Anno. Cases 1914C 188; *Seuss v. Schukat, supra.*

The terms of the antenuptial agreement and of the deed of separation are plain and explicit. The court will determine their legal effect. *Howland v. Stitzer*, 240 N.C. 689, 696, 84 S.E. 2d 167.

In both the antenuptial agreement and the deed of separation Ruth U. Turner released her right of dower in the real estate of E. F. Turner. The provision in the deed of separation that she would sign such deeds and papers as might be necessary to enable E. F. Turner to sell, assign or deal with his property was merely a provision consistent with, and supplementary to the antenuptial agreement: its obvious purpose was that she would release her right of dower by her signature to a deed in case the validity of a deed to bar her right of dower might be questioned by anyone. The release of her rights to E. F. Turner's personal property at his decease in the deed of separation is merely supplementary to the antenuptial agreement.

If Ruth U. Turner and E. F. Turner had not resumed conjugal cohabitation, there is nothing in the two contracts to render the performance of both impossible, so that the two could not stand together. Considering the relationship of the parties and the object to be accomplished in both contracts, it seems plain that it was not the intention of the parties that the deed of separation should discharge the antenuptial agreement, but that the intention of the parties was that the deed of

separation should be consistent with, and supplementary to, the antenuptial agreement. Such being the clear intent of the parties—and "the heart of a contract is the intention of the parties," *Electric Co. v. Insurance Co.*, 229 N.C. 518, 50 S.E. 2d 295—no legal inference of substitution of the deed of separation for the antenuptial agreement arises.

The learned and experienced judge below ruled correctly that the deed of separation did not discharge or rescind the antenuptial agreement, that the antenuptial agreement was in full force and effect at the time of E. F. Turner's death, and that Ruth U. Turner by the plain terms of her antenuptial agreement had no dower in the realty of her deceased husband.

The case of *Hewlett v. Almand* (Court of Appeals of Ga. Division No. 2), 103 S.E. 173, relied upon by the appellant is distinguishable: in that case two antenuptial agreements were before the court.

The judgment entered below is
Affirmed.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.