E. SHEPARD HUNTLEY, Plaintiff v. EUNICE J. HUNTLEY, Defendant

No. COA99-1404

(Filed 5 December 2000)

**1. Divorce— premarital agreement—revocation**

The trial court erred by finding that a premarital agreement had been rescinded by the conduct of the parties after their marriage; the Uniform Premarital Agreement Act, N.C.G.S. § 52B-6, is unambiguous in providing that a premarital agreement may be amended or revoked after marriage only by a written agreement signed by the parties.

**2. Divorce— equitable distribution—premarital agreement**

The trial court erred by granting equitable distribution when a premarital agreement remained valid and enforceable.

**3. Divorce— equitable distribution—marital debts**

The question of whether debts incurred by a husband following the date of separation were marital debts was moot because it concerned equitable distribution, and a valid premarital agreement existed.

Appeal by defendant from judgment entered 26 August 1997 by Judge Charles L. White and judgment entered 31 August 1999 by

Judge Susan E. Bray in District Court, Guilford County. Heard in the Court of Appeals 20 September 2000.

*Barbara R. Morganstern, for the plaintiff-appellee.*

*Johnson Tanner Cooke Younce & Moseley, by J. Sam Johnson, Jr., for the defendant-appellant.*

WYNN, Judge.

Plaintiff and Defendant were married on 3 December 1994 and lived together until they separated on 1 January 1996. No children were born of the marriage, but the parties did acquire marital property during the course of the marriage. However, this appeal concerns the disposition of the marital residence, owned by the husband before the parties married. After separating, the husband moved out and the wife continued living in the marital residence.

In November 1996, the husband brought an equitable distribution action and further sought an order of interim allocation of the marital residence and its contents to him. The wife answered and counterclaimed alleging the existence of a valid written Premarital Agreement executed 28 November 1994. The Agreement, signed by both parties and notarized, provided in part relevant to the marital home the following clause:

> 7. <u>Home at 3905 Henderson Road in Greensboro</u>. Husband and Wife plan to live in the home now owned by Husband at 3905 Henderson Road. Shortly after the marriage, Husband will convey to Wife a ½ undivided interest, as tenant in common, in this real estate. In addition, he will convey to her the right to live in the home after the death of the Husband, as long as she chooses to make it her home.

The wife alleged by counterclaim that the husband had breached the Agreement by failing to convey the property interest as agreed; so, she sought specific performance. The Agreement also contained a waiver by each party of their equitable distribution rights.

The husband replied to his wife's counterclaim admitting the existence of the Agreement, admitting his failure to convey to his wife the agreed upon property interest as stipulated in the Agreement, and asserting defenses of (1) waiver by laches, (2) a subsequent contrary oral agreement, (3) unjust enrichment, and (4) nonperformance of the Agreement.

**HUNTLEY v. HUNTLEY**

[140 N.C. App. 749 (2000)]

Both parties moved for summary judgment on the issue of specific performance of the Agreement. The trial court, per District Court Judge Charles L. White, denied both motions. The husband then brought on for hearing his motion for interim allocation of the marital property, which was heard on 11 June 1997 before Judge White. By order entered 25 August 1997, *nunc pro tunc* 11 June 1997, Judge White found that the parties had rescinded the Agreement by their conduct, declared the Agreement null and void, ruled that the husband was entitled to proceed on his claim for equitable distribution of the marital property, and granted the husband's motion for interim allocation of the marital property.

The wife appealed to this Court from that order; but, we held that her appeal was interlocutory, and remanded the matter to the trial court for disposition of the equitable distribution action. Following judgment in that action entered by District Court Judge Susan E. Bray favoring the husband, the wife then properly appealed to this Court from the order entered by Judge White which declared the Agreement to be rescinded, null and void, and from the equitable distribution judgment favoring the husband entered by Judge Bray.

In her appeal, the wife asserts five assignments of error: (1) that under N.C. Gen. Stat. § 52B-6, the trial court erred in rescinding the Agreement based on the parties' conduct following the execution of the Agreement, (2) that, alternatively, the facts do not support the trial court's finding that the Agreement was rescinded under general contract law principles, (3) that the trial court erred in allowing the admission of parol evidence to alter the terms of the Agreement, which led to its rescission, (4) that the trial court erred in allowing equitable distribution under the judgment entered by Judge Bray, as the Agreement, which waived any equitable distribution rights, remained valid and enforceable, and (5) that the trial court erred in granting judgment to the husband reimbursing him for payment of debts incurred after the date of separation. We conclude that the trial court committed reversible error.

**[1]** We first consider the wife's claims regarding the order entered by Judge White. She contends that the trial court committed error in finding that the Agreement was rescinded by the conduct of the parties subsequent to its execution. We agree.

The wife alleges that she waived her equitable distribution rights in the Agreement in exchange for the husband's written promise to convey to her the property interest as provided in paragraph 7 of the

Agreement. The husband argues that there were sporadic discussions between the parties following their wedding concerning the conveyance, but that no interest was ever conveyed, and that the wife never made a demand for performance prior to their separation. The trial court determined that the parties, by their conduct after the execution of the Agreement, had rescinded paragraph 7 of the Agreement, which was an essential term thereof. The trial court thus determined that the entire Agreement, as a result of the rescission of paragraph 7, was null and void.

The North Carolina Uniform Premarital Agreement Act governs premarital agreements. N.C. Gen. Stat. §§ 52B-1 *et seq.* (1999). That Act became effective on 1 July 1987 and is applicable to premarital agreements executed on or after that date. 1987 N.C. Sess. Laws ch. 473, § 3. The Agreement in this case is therefore governed by the Uniform Premarital Agreement Act.

Under the Uniform Premarital Agreement Act, N.C. Gen. Stat. § 52B-6 provides in part that "[a]fter marriage, a premarital agreement may be amended or revoked only by a written agreement signed by the parties." N.C. Gen. Stat. § 52B-6 (1999). N.C. Gen. Stat. § 52B-7 sets forth the conditions which must be proven by a party seeking to avoid the enforcement of a premarital agreement, but generally concerns inequitable conditions surrounding the execution of the agreement, such as voluntariness and unconscionability. *See* N.C. Gen. Stat. § 52B-7 (1999). N.C. Gen. Stat. § 52B-9 addresses the limitation of actions related to such agreements, stating that "[a]ny statute of limitations applicable to an action asserting a claim for relief under a premarital agreement is tolled during the marriage of the parties to the agreement. However, equitable defenses limiting the time for enforcement, including laches and estoppel, are available to either party." N.C. Gen. Stat. § 52B-9 (1999).

In general, "principles of construction applicable to contracts also apply to premarital agreements." *Howell v. Landry*, 96 N.C. App. 516, 525, 386 S.E.2d 610, 615 (1989) (citing *Turner v. Turner*, 242 N.C. 533, 539, 89 S.E.2d 245, 249 (1955)), *disc. review denied*, 326 N.C. 482, 392 S.E.2d 90 (1990). Our Supreme Court has held that premarital agreements may be amended or rescinded after marriage if the parties fully and freely consent thereto. *Turner*, 242 N.C. at 538, 89 S.E.2d at 249. In construing premarital agreements executed after 1 July 1987, however, we must bear in mind, in addition to general contract principles, the strict requirements of the Uniform Premarital

Agreement Act. While we have not previously had an opportunity to consider an alleged amendment or revocation of a premarital agreement since the passage of the Act, we conclude the plain language of § 52B-6 mandates that any amendment or revocation of a premarital agreement following the marriage of the parties requires a signed, written agreement. As no such written amendment or revocation was alleged or proved in the instant case, we follow the expressed law of our legislature and hold that the trial court committed error in finding that paragraph 7 was rescinded and thereby declaring the Agreement null and void.

Significantly, all but one of the authorities cited by the husband either pre-date the Act, or concern contracts other than premarital agreements, and thus those authorities are not controlling. The one authority cited by the husband concerning a premarital agreement executed after 1 July 1987 is not dispositive. In *In re Estate of Pate*, 119 N.C. App. 400, 459 S.E.2d 1, *disc. review denied*, 341 N.C. 649, 462 S.E.2d 515 (1995), we considered whether the parties' cancellation of wedding plans, and subsequent reconciliation and marriage, nullified their premarital agreement. *Id.* We relied on the intent of the parties, determined from the language of the agreement and the facts of the particular case, to find that the premarital agreement was not terminated by the temporary cancellation of the wedding plans. *Id.* at 405, 459 S.E.2d at 4. Because the agreement did not specify a time period within which the wedding should take place, we relied on general contract principles to conclude that the wedding must only have occurred within a reasonable time period. *Id.*

The Uniform Premarital Agreement Act is silent as to the amendment and revocation of premarital agreements *prior* to marriage, and thus it was appropriate to apply general contract principles to determine the outcome in *Pate*. However, we find no such ambiguity in the statute's language regarding the amendment or revocation of premarital agreements *after* marriage. As the statute is unambiguous on this issue, we need not consider the wife's second assignment of error concerning whether the Agreement was rescinded under general contract law principles.

The wife further contends that the trial court erred in permitting the plaintiff to introduce parol evidence, which the trial court relied upon in determining that the parties had rescinded the Agreement by their conduct. The trial court allowed the husband to introduce testimony in an attempt to show that the parties had not performed the

Agreement, or had intended to amend the Agreement at some later time. The husband also was permitted to introduce testimony indicating that the parties engaged in discussions after their marriage, which discussions often included the husband's accountant and attorney, to the effect that the terms of the conveyance would be altered. The husband testified at the initial hearing, over the wife's objection, that the parties discussed the conveyance of a one-third interest instead of a one-half interest, and contemplated the wife reimbursing or compensating the husband for the value of the interest conveyed, contrary to the terms of the Agreement. The wife objected at the hearing that this evidence was being introduced to alter the terms of the Agreement, which objection was overruled by the trial court under the reason that the testimony was relevant not for purposes of amending the Agreement but as to whether paragraph 7 of the Agreement was rescinded. The trial court's basis for this distinction between amendment and partial rescission under the circumstances is unclear. What is clear is that there was no evidence presented that the parties ever entered into a written agreement amending or revoking the original Agreement. As such, we decline to rule on whether the admitted testimony was impermissible parol evidence since our ruling on the wife's first assignment of error renders this point moot.

[2] In her fourth assignment of error the wife asserts that the trial court erred in granting equitable distribution when the Agreement remained valid and enforceable. We agree.

The parties stipulated that a valid and enforceable premarital agreement was entered into by the parties. Undisputedly, the Agreement became effective on 3 December 1994 upon the parties' marriage. See N.C. Gen. Stat. § 52B-5 (1999). As we have found that the Agreement was not subsequently revoked or amended by written agreement, the Agreement remains valid and enforceable. The Agreement specifically provides that if the parties are separated, "each party waives and relinquishes all claims and rights to an equitable distribution of marital property within the meaning of North Carolina law . . . ." Such agreements are enforceable under statute. See N.C. Gen. Stat. § 52B-4 (1999). Therefore, we conclude that the trial court erred in allowing the husband an equitable distribution of the marital property.

[3] The wife's final assignment of error concerns debts incurred by the husband following the date of separation. As part of the equitable distribution proceedings, the husband introduced evidence of various

debts which he incurred following the date of separation, and the trial court considered these debts as distributional factors under N.C. Gen. Stat. § 50-20(c)(12) supporting the husband's assertion that an equal distribution would not be an equitable distribution. *See* N.C. Gen. Stat. § 50-20(c)(12) (1999). The wife alleges that these debts were improperly considered as they did not constitute marital debt pursuant to N.C. Gen. Stat. § 50-20. *See* N.C. Gen. Stat. § 50-20 (1999). As this assignment of error concerns the equitable distribution proceedings, we find that the issue is moot based on our conclusion that a valid premarital agreement exists, and we therefore decline to rule on the merits of this issue.

We conclude that the trial court erred in finding that paragraph 7 of the Agreement was rescinded by the parties' conduct following its execution, and that the Agreement was thereby rescinded, and remand to the trial court for proceedings consistent with this opinion.

Reversed and remanded.

Judges LEWIS and HUNTER concur.